David Lee Myers appeals from his conviction and sentence of death on one count of aggravated murder with a death penalty specification. Myers' conviction and sentence stems from the brutal murder and sexual mutilation of Amanda Maher, which occurred on August 4, 1988.
On the evening of August 3, 1988, Amanda Maher and Glenn Smith went to Five Points Tavern, in Xenia. Defendant, David Lee Myers, entered the bar and began playing pool with Smith and Lee Weimer, a bartender. During the course of the evening Glenn Smith had quite a bit to drink. Around 12:30 — 1:00 a.m. on August 4, 1988, Amanda Maher, Glenn Smith, and David Myers left Five Points Tavern in Smith's car and drove to another bar a short distance away, the Roundtable.
When they arrived at the Roundtable, Amanda Maher went inside while Glenn Smith and David Lee Myers argued in the parking lot outside. When Smith and Myers entered the bar, Smith became rowdy and broke a glass, prompting the barmaid to call police.
At approximately 1:13 a.m. Xenia Police Officers Savage and Rinehart arrived at the Roundtable and arrested Glenn Smith for disorderly conduct. Police gave Smith's wallet to Amanda Maher to enable her to get home. David Myers told Glenn Smith and Officer Savage that he would make sure Amanda Maher got home. Officers Savage and Rinehart then transported Glenn Smith to the Greene County Jail. Officer Rinehart resumed his normal patrol duties at 1:23 a.m.
Amanda Maher and David Lee Myers searched both inside and outside the Roundtable bar for the keys to Glenn Smith's car, but couldn't find them. They then left together. Another patron, Charles Van Hoose, saw them walking across the parking lot in the direction of Home Avenue. At approximately 1:30 — 1:35 a.m., Officer Rinehart observed Amanda Maher and David Lee Myers walking down Home Avenue, near the intersection with South Detroit Street.
At 2:10 a.m., David Lee Myers was seen by Lee Weimer, the bartender at Five Points Tavern, and Brenda Osborne, one of the customers, getting into his car, which was parked across the street from Five Points Tavern. At approximately 2:15 a.m., Myers entered the Roundtable bar at last call and ordered a drink. Myers immediately went to the restroom, and upon his return sat down and began to talk with another customer, Don Hilderbran. When Hilderbran asked Myers if he "got any," Myers responded that he tried but "she" wasn't willing so he just dropped her off. Myers subsequently left the Roundtable and went to Hilderbran's house.
At around 3:00 a.m., Jennifer Berry and Julia Griffith were walking through an old railroad bed area near Railroad Street in Xenia when they discovered Amanda Maher, lying on the tracks and gasping for air. The area is on a path that is a direct walking route between Five Points Tavern and the Roundtable bar. Berry and Griffith ran home and called police.
At approximately 3:40 a.m., Xenia police officers, including Officers Savage and Rinehart, arrived on the scene. They discovered Amanda Maher lying on her back with the right side of her face turned upward. She was naked but for a shirt that was pulled up around her neck. A railroad spike had been driven into Amanda Maher's head at the temple. She was gasping for air. Amanda Maher's injuries were so severe that Officer Savage didn't recognize her. Amanda Maher was just three hundred yards from where Officer Rinehart had seen her and David Lee Myers walking together. Amanda Maher died while being care flighted to Miami Valley Hospital.
Xenia Police quickly classified David Lee Myers as a suspect. When questioned, Myers told police that Amanda Maher was at the Roundtable bar looking for Glenn Smith's car keys when he last saw her. Myers' statement conflicted with the observations of Officer Rinehart, who had seen Amanda Maher and David Lee Myers walking together just three hundred yards from the murder scene. When police confronted Myers with Officer Rinehart's observation, Myers had no response. Police then arrested David Lee Myers and charged him with the murder of Amanda Maher.
An autopsy revealed that Amanda Maher had been strangled. Three rocks had been pushed into the victim's vaginal cavity. She had a laceration to her forehead consistent with an attempt to drive the railroad spike into her skull at that location. Cause of death was severe head trauma from the railroad spike that was driven through her head at the right temple.
A taping of Amanda Maher's pubic area produced a foreign pubic hair. Forensic testing, including microscopic and DNA analysis, indicated that Glenn Smith and two other potential suspects, Gregg Grimes and Terry Rogers, could not have been the donor of that hair. The foreign pubic hair was microscopically similar in all respects to David Myers' known pubic hair standard. Further, Myers was included within the two percent of the Caucasian population that could have been the donor of that hair. When police conducted a search of Myers' car, they discovered the wallets of Amanda Maher and Glenn Smith underneath the front seat, concealed inside a glove.
After he was jailed on this murder charge Myers spoke with another inmate, Clarence David Tincher. While the two men were discussing their past sexual exploits, Myers stated that they couldn't get him on a rape. Myers then asked Tincher if he ever put three rocks up a girl. When Tincher replied no, Myers stated that he had done that. A few days later when Tincher asked Myers "why" a railroad spike, Myers responded, "because it was handy." Myers then told Tincher never to try and drive anything through a person's forehead because it won't go, but it will go through the temple. When Myers made these statements to Tincher the details of this crime, including the rocks that were in the victim's vagina, the forehead wound, and the temple location of the railroad spike through her head, had not yet been made public by Xenia police.
On August 8, 1988, David Lee Myers was indicted on one count of Aggravated Murder, R.C. 2903.01 (B), with a death penalty specification that the offense had been committed while Myers was committing aggravated robbery, and that Myers was the principal offender in the aggravated murder. R.C. 2929.04 (A) (7). The case number assigned to this cause was 88-CR-251. Following years of extensive pretrial litigation, the State dismissed this case via a nolle prosequi on February 1, 1991.
Two years later, on February 4, 1993, David Lee Myers was reindicted in case number 93-CR-66 on this same charge, with the same death penalty specification. Once again there was extensive pretrial litigation. A jury trial commenced on January 2, 1996. Myers' defense at trial was that the evidence was insufficient to prove that he was Amanda Maher's killer. According to Myers' theory of the case, two other persons, Gregg Grimes and Terry Rogers, were likely perpetrators of the crime.
On February 8, 1996, the jury found David Lee Myers guilty as charged. The penalty phase of the proceedings began on February 20, 1996, following which the jury concluded that the aggravating circumstance outweighed the mitigating factors beyond a reasonable doubt. Accordingly, on February 23, 1996, the jury recommended that David Lee Myers be sentenced to death. The trial court, after conducting its own independent review, reached the same conclusion. Thus, on March 1, 1996, the trial court sentenced David Lee Myers to death for the aggravated murder of Amanda Maher. The trial court also imposed a sentence of ten to twenty-five years imprisonment for aggravated robbery. On March 14, 1996, the trial court filed an amended sentencing entry deleting the sentence for aggravated robbery.
David Lee Myers has timely appealed to this court from his conviction and death sentence. He presents twenty assignments of error for our review, alleging numerous prejudicial errors arising from the investigation of this case through the penalty phase of his capital murder trial.
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED WHEN IT ADMITTED INTO EVIDENCE THE OTHER ACTS TESTIMONY OF DEBORAH REAGIN OVER APPELLANT'S OBJECTION. THE ADMISSION OF OTHER ACTS TESTIMONY OF DEBORAH REAGIN WAS AN ABUSE OF THE TRIAL COURT'S DISCRETION AND IT VIOLATED APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT.
This assignment of error concerns "other acts" evidence which the trial court admitted pursuant to Evid.R. 404 (B).
Deborah Reagin testified that on February 9, 1986, she and her boyfriend were drinking in a bar in Xenia when they had an argument, following which her boyfriend left her alone at the bar without a ride home. Defendant Myers was present in the bar at that time. He bought Reagin a drink and offered her a ride home, which she accepted. Myers drove Reagin to a cemetery, where he forced her out of the car and raped her at knife point. Myers then drove Reagin home and released her unharmed in front of her residence. As a result of these events, David Myers was charged with rape and subsequently convicted of sexual battery.
The trial court admitted this evidence at Myers' trial, over defense objection, because these "other acts" tended to prove Myers' identity as the perpetrator of the aggravated murder of Amanda Maher. The trial court accepted the State's argument that Myers' identity as the perpetrator was demonstrated by his scheme, plan or system, his modus operandi used to commit both this offense and the previous crime. That modus operandi involves picking up women who are stranded in bars in Xenia without a ride home, offering them a ride, and taking the women to secluded locations and sexually assaulting them.
Myers argues that the trial court abused its discretion in admitting evidence in the form of testimony by Deborah Reagin concerning Myers' 1986 sexual assault of her as "other acts of wrongdoing." According to Myers, admission of this evidence violated Evid.R. 404 (B) because it does not tend to prove his identity as the perpetrator of this aggravated murder.
An accused cannot be convicted of one crime by proving that he or she has committed other crimes, or is a bad person.State v. Jamison (1990), 49 Ohio St.3d 182. Thus, pursuant to Evid.R. 404 (B) and R.C. 2945.59, evidence of other crimes or acts of wrongdoing by a defendant wholly independent of the crime with which he is charged is not admissible to prove the defendant's bad character in order to show that defendant acted in conformity with that bad character on another particular occasion. State v. Lowe (1994), 69 Ohio St.3d 527; State v.Curry (1975) 43 Ohio St.2d 66.
In State v. Smith (1992), 84 Ohio App.3d 647, 660, we observed:
 The basic thrust of Evid.R 404 concerns the "propensity rule," which is a basic principle that evidence of a person's character trait is not admissible for the purpose of proving that he acted in conformity with his character on a particular occasion. It prohibits use of propensity to demonstrate actions conforming to the propensity. It creates a forbidden inferential pattern, in which character or a trait of it is used to show propensity and to demonstrate therefrom conforming conduct. The policy of the rule is not based on relevance but upon the danger of prejudice. See 1 Weissenberger, Ohio Evidence (1993), Sections 404.4 and 404.23.
Evidence of other crimes or acts of wrongdoing may be admissible, however, if it tends to prove one of the matters enumerated in Evid.R. 404(B) or R.C. 2945.59, such as the defendant's identity as the perpetrator of an offense when identity is in issue. Lowe, supra.
 One recognized method of establishing that the accused committed the offense set forth in the indictment is to show that he has committed similar crimes within a period of time reasonably near to the offense on trial, and that a similar scheme, plan or system was utilized to commit both the offense at issue and the other crimes. Whiteman v. State, supra (119 Ohio St. 285, 164 N.E. 51); Barnett v. State (1922), 104 Ohio St. 298, 135 N.E. 647." State v. Curry, 43 Ohio St.2d at 73, 72 O.O.2d at 41, 330 N.E.2d at 725-726.
 Identity is in issue when the fact of the crime is open and evident but the perpetrator is unknown and the accused denies that he committed the crime. In that event other act evidence tends to show the defendant's identity as the perpetrator by showing that he committed crimes of a similar methodology within a period of time reasonably near to the offense on trial, which itself would constitute probative evidence of the probability that the same person, whoever he or she may be, committed both crimes. State v. Curry, supra; State v. Hector (1969), 19 Ohio St.2d 167, 48 O.O.2d 199, 249 N.E.2d 912; State v. Shedrick (1991), 61 Ohio St.3d 331, 574 N.E.2d 1065. If the other act evidence tends to establish the identity of the accused it is competent evidence, no matter what else it may prove. Barnett v. State (1922), 104 Ohio St. 298, 135 N.E. 647.
Smith, supra at 666.
In discussing the use of "other acts" evidence to establish identity, the Ohio Supreme Court in State v. Lowe, supra,
stated:
 "Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404(B)." State v. Jamison
(1990), 49 Ohio St.3d 182, 552 N.E.2d 180, syllabus. " 'Other acts' may be introduced to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense." State v. Smith (1990), 49 Ohio St.3d 137, 141, 551 N.E.2d 190, 194. While we held in Jamison that "the other acts need not be the same as or similar to the crime charged," Jamison, syllabus, the acts should show a modus operandi identifiable with the defendant. State v. Hutton (1990), 53 Ohio St.3d 36, 40, 559 N.E.2d 432, 438.
 A certain modus operandi is admissible not because it labels a defendant as [634 N.E.2d 620] a criminal, but because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator. Other-acts evidence is admissible to prove identity through the characteristics of acts rather than through a person's character. To be admissible to prove identity through a certain modus operandi, other-acts evidence must be related to and share common features with the crime in question.
69 Ohio St.3d at 531.
Myers' conduct on both the prior occasion and this occasion, as alleged, involved the sexual assault of a woman whom he'd picked up in a bar after she was stranded there by another man. However, the prior occasion involved sexual intercourse, which was not involved here. Further, the victim in this instance was brutally mutilated while on the prior occasion the victim was released, otherwise unharmed. These dissimilarities are too significant to permit an inference that the perpetrator of the earlier offense committed the later one. More importantly, the act of picking up a woman in a bar is not so unique as to demonstrate a methodology particular to Myers, as opposed to other men who frequent those places. Therefore, the identity of Amanda Maher's killer is not proved by the facts of Myers' prior offense, and the trial court abused its discretion when it admitted the evidence of his prior offense pursuant to Evid.R. 404(B) for that purpose.
Error alone will not support reversal of a court's judgment. It must be demonstrated not only that the error was committed, but also that the error prejudiced the party complaining of it.Smith v. Flesher (1967), 12 Ohio St.2d 107. In determining whether prejudice occurred, appellate courts must examine the record as a whole. Hallworth v. Republic Steele Corp. (1950),153 Ohio St. 349. Harmless errors, that is, errors which do not affect substantial rights, must be disregarded by the reviewing court. Crim.R. 52(A). In appeals from criminal convictions, non-structural error is harmless beyond a reasonable doubt and non-reversible when there is other, overwhelming evidence of guilt. State v. Esparza (1996), 74 Ohio St.3d 660.
David Myers was the last person seen with the victim when at around 1:30 a.m. a police officer observed Myers walking down Home Avenue with the victim, at a point just three hundred yards from where the victim's body was later discovered. At 2:10 a.m., Myers was seen getting into his car alone at Five Points Tavern. Around 2:15 a.m., Myers entered the Roundtable bar in time for last call. The victim's body was discovered at 3:00 a.m. near a path that is a shortcut between Five Points Tavern and the Roundtable bar. When questioned by police about this crime, Myers denied leaving the Roundtable bar with the victim or walking down Home Avenue with her. This account conflicted with the observation of witnesses.
Upon searching Myers' car, police discovered a glove underneath the front seat. Concealed inside that glove police found both the victim's wallet and her boyfriend's wallet, which the victim was given earlier that evening by police when they arrested her boyfriend for disorderly conduct.
Scientific examination of a pubic hair found on the victim revealed that it was microscopically similar in all respects to Myers' known standard. DNA analysis demonstrated that Myers was included within the two percent of the caucasian population who could have been the donor of that hair. Those same scientific tests excluded as possible donors the victim's boyfriend and two other persons whom Myers claims are the likely perpetrators of this murder, Greg Grimes and Terry Rogers.
While he was in jail after being arrested for this offense, Myers asked another inmate if he "ever put three rocks up a girl?" When this inmate asked Myers, "Why a railroad spike?," Myers said, "because it was handy." Myers told this inmate never to try and drive anything through a person's forehead because it won't go, but it will go through the temple. Myers also said: "they can't get me on a rape." At the time Myers made these statements, the details of this crime including the three rocks that had been pushed into the victim's vagina, the victim's forehead injury, and the temple location where the railroad spike was driven through the victim's head, had not been released to the public by the police.
In this case there is some direct evidence as well as very strong circumstantial evidence of guilt. Both types of evidence have the same probative value. State v. Jenks (1991), 61 Ohio St.3d 259. In our opinion, the totality of this evidence provides overwhelming evidence of Myers' guilt. Accordingly, we find that the admission of evidence regarding Myers' sexual assault of Debbie Reagin, even though error, was harmless beyond a reasonable doubt.
The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT MYERS' MOTION TO DISMISS THIS CASE FOR VIOLATIONS OF APPELLANT'S STATUTORY AND CONSTITUTIONAL RIGHTS TO A SPEEDY TRIAL UNDER OHIO REV. CODE ANN. SECTION 2945.71, ET SEQ. (ANDERSON 1993), U.S. CONST. AMEND. VI AND XIV, AND OHIO CONST. ART. I, SECTION 10.
 Statutory Speedy Trial
Pursuant to R.C. 2945.71 (C) (2), the State is required to bring a defendant who is charged with a felony offense to trial within two hundred seventy days following the defendant's arrest unless the time for trial is extended pursuant to any of the provisions in R.C. 2945.72. Once a defendant demonstrates that the statutory time period has elapsed, a prima facie case for discharge pursuant to R.C. 2945.73 has been established, and the State then bears the burden to demonstrate that defendant was brought to trial in a timely manner. State v.Grinnell (1996), 112 Ohio App.3d 124.
This crime occurred on August 4, 1988. Myers was arrested and charged that same day in case number 88-CR-251. The following day the probation department placed a detainer against Myers for a probation violation. The validity of the probation detainer was never challenged by Myers, and any error in that regard has been waived.
Because of the probation detainer, Myers was not entitled to the benefits of the triple count provision in R.C. 2945.71 (E), that is, three days credit for each day spent in jail awaiting trial, in computing the time within which the State was required to bring him to trial. State v. Phillips (1990),69 Ohio App.3d 379; State v. Martin (1978), 56 Ohio St.2d 207.
The initial trial date set by the court in this case was October 31, 1988. For speedy trial purposes, time ran from August 4, 1988 until October 14, 1988, during which period seventy one days chargeable to the State elapsed. On October 14, 1988, the trial was continued by the court at Myers' request until January 23, 1989. Continuances granted at the defendant's request properly extend the time for trial and are not chargeable to the State for speedy trial purposes. R.C.2945.72 (H).
A review of this trial record reveals that, beginning on October 14, 1988, there was a continuous, unbroken sequence of continuances which extended the time for trial in this case until October 9, 1990. All but three of those continuances were requested by Myers and are unchallenged in this appeal. Out of those three continuances not requested by Myers, he challenges the validity of only the two which were granted at the State's request.
On or about April 11, 1989, the court continued Myers' trial until June 12, 1989, at the request of the State. This continuance was journalized by entry filed May 5, 1989. On or about June 9, 1989, the court again continued Myers' trial until September 5, 1989, again at the request of the State. This continuance was also journalized by entry. Myers challenges the validity of these continuances, claiming that the entries journalizing them do not demonstrate that they were necessary and reasonable.
It is clear from the record of the trial court's proceedings that the State requested these two continuances in order to complete scientific testing, including DNA analysis, which the State wished to have done on some of the physical evidence in this case, including a foreign pubic hair found on the victim. These were clearly reasonable continuances granted upon the State's motion, and they properly extended the time for trial. R.C. 2945.72 (H).
Although there were no specific continuances in effect for the period from October 9, 1990 to October 17, 1990, that eight day period is not chargeable to the State for speedy trial purposes because pending pretrial motions filed by Myers, including a motion to dismiss the indictment, tolled the time. R.C. 2945.72 (E); State v. Grinnell, supra. Moreover, we note that given the complexity of this capital case and the tremendous volume of pretrial motions filed by Myers, it was not unreasonable that some of those pretrial motions were pending for over three months before they were ruled upon by the court.
On October 17, 1990, the court continued the trial until March 3, 1991. This continuance was properly journalized by entry. Myers challenges this continuance, claiming that it was invalid because the entry never specifically charged this continuance to him. This argument is disingenuous. A review of the trial record demonstrates that Myers expressly consented to this continuance, stating it was "easily acceptable." (T. 10-17-90, at p. 13). R.C. 2945.72(H). Moreover, the very purpose of this continuance was to allow time for evidentiary hearings on pending pretrial motions that Myers had filed, including a motion to dismiss the indictment and a motion to disqualify the entire Greene County Prosecutor's office, which hearings Myers had specifically requested. By these actions Myers implicitly, if not explicitly, requested this continuance. In any event, this continuance was clearly necessary and reasonable. On this record, we see nothing which demonstrates that this was not a valid continuance granted by the trial court pursuant to R.C 2945.72(H).
On February 1, 1991, the indictment was dismissed via a nolle prosequi filed by the State. From that point, time stopped running for speedy trial purposes because this aggravated murder charge was no longer pending. State v. Broughton (1991),62 Ohio St.3d 253. Myers never challenged the validity of the nolle prosequi, and thus any error in that regard has been waived. Between August 4, 1988, the date Myers was arrested and charged with this offense, and February 1, 1991, the date this case was dismissed by the State, only seventy-one days chargeable to the State for speedy trial purposes had elapsed.
On February 4, 1993, Myers was reindicted by the grand jury on this same aggravated murder charge and death penalty specification in case number 93-CR-66. The following day, February 5, 1993, Myers was served with a copy of the indictment at Dayton Correctional Institute, where he was serving time on unrelated charges. For speedy trial purposes, no time chargeable to the State expired between February 1, 1991, and February 5, 1993, because no felony charges pertaining to this aggravated murder were then pending.Broughton, supra. Only the seventy-one days that had elapsed in the first case counted against the State. Time commenced running again on February 5, 1993, when Myers was served, leaving the State one hundred ninety-nine days out of the original two hundred seventy days to bring Myers to trial. Id.
The initial trial date set by the trial court was March 1, 1993. For speedy trial purposes, time ran from February 5, 1993 until February 26, 1993, during which period twenty-one days chargeable to the State elapsed.
On or about February 26, 1993, the court continued the trial until October 12, 1993, at Myers' request. This continuance was properly journalized by entry and is not chargeable to the State for speedy trial purposes. R.C. 2945.72(H).
Beginning on February 26, 1993, this trial record reflects a continuous, unbroken sequence of continuances granted by the trial court that extended the time for trial in this case until at least October 16, 1995. Each of those continuances were specifically requested by Myers. In this appeal Myers challenges only two of those continuances.
On or about September 21, 1994, the court continued this trial until February 27, 1995, at Myers' request. This continuance was journalized by entry filed September 22, 1994. Myers argues that this continuance was invalid because the court's journal entry did not specifically charge this continuance to him. A review of the record of the trial court's proceedings, however, demonstrates that Myers specifically requested this continuance, and that by entry filed September 9, 1994 Myers waived his speedy trial rights for purposes of this continuance. The record thus clearly portrays a continuance chargeable to Myers which extended the time for trial at Myers' own request. R.C. 2945.72(H).
On or about February 24, 1995, the court continued the trial until September 11, 1995, again at Myers' request. Myers argues that this continuance was invalid because the court's entry journalizing the continuance was not filed until July 28, 1995, well after the expiration of the February 27, 1995 trial date.State v. Mincy (1982), 2 Ohio St.3d 6. A review of the trial record reveals, however, that on February 24, 1995, before the February 27, 1995 trial date had passed, Myers specifically requested and was granted this continuance by the trial court until September 11, 1995. More importantly, on February 24, 1995, Myers filed an entry waiving his speedy trial rights until September 11, 1995. State v. Mincy, supra, is clearly distinguishable and not controlling in this situation. This was a valid continuance which properly extended the time for trial pursuant to Myers' own request. R.C. 2945.72(H).
Myers concedes in his appellate brief, and a review of the trial record confirms, that valid judgment entries were filed by the trial court in this case which properly extended the trial date from October 16, 1995, up to November 20, 1995, at Myers' own request. Myers argues, however, that the entries in the trial record which were filed on or after November 17, 1995, are legally insufficient to properly continue the trial from November 20, 1995, until January 2, 1996, the date Myers' jury trial commenced. We need not address this argument.
Myers' last motion to dismiss claiming an alleged violation of his rights to a speedy trial was filed on August 29, 1994. The trial court overruled that motion on October 6, 1995. As of that date, October 6, 1995, no statutory speedy trial violation had occurred. More precisely, at that point in time only ninety two days chargeable to the State, out of the allowable two hundred seventy days, had elapsed for speedy trial purposes. After October 6, 1995, Myers failed to file any additional motions for discharge claiming a violation of his speedy trial rights. Trial commenced on January 2, 1996. Thus, what transpired for speedy trial purposes between October 6, 1995 and January 2, 1996, is not before us in this appeal.
Even assuming, arguendo, that all of the time between November 20, 1995, when the last valid continuance expired by Myers' own admission, and January 2, 1996, when the trial commenced, should be charged against the State for speedy trial purposes, Myers was nevertheless brought to trial within one hundred thirty-five days, well within the allowable two hundred seventy day limit. Myers' statutory speedy trial rights were not violated in this case.
 Constitutional Speedy Trial
Myers additionally argues in this assignment of error that the delay in bringing him to trial violated his right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. We reject this contention.
In analyzing Myers' claim that his constitutional rights to a speedy trial were violated, we must balance and weigh the conduct of the prosecution and that of the defendant by examining four factors: the length of the delay, the reason for the delay, defendant's assertion of his right, and any prejudice to defendant. Barker v. Wingo (1972), 407 U.S. 514;State v. Looper (1988), 61 Ohio App.3d 448.
With respect to the length of the delay in this case, some seven years and five months had passed between Myers' initial arrest and the commencement of his trial. However, the two year period during which no charge was pending against Myers as a result of the State's nolle prosequi does not weigh against the State because that nolle prosequi was not entered by the State in bad faith, only to avoid speedy trial problems. UnitedStates v. MacDonald (1982), 459 U.S. 1.
The record demonstrates that the State used this two year period to conduct additional investigation of previously known suspects Gregg Grimes and Terry Rogers, and of additional potential suspects such as the victim's boyfriend and stepfather. Polygraph examinations and DNA tests were performed on those people during this time. Moreover, a jailhouse informant was used to elicit information about this case from Gregg Grimes. Further, the record amply demonstrates that the prosecutor nollied this case and commenced this additional investigation at defense counsel's request and insistence that the State had charged the wrong man. We see no bad faith on the part of the State.
Subtracting the two year nolle period from the total delay in this case, a delay of some five years and five months remains in bringing Myers to trial. By Myers' own admission, almost four years of that period of delay is directly attributable to his own numerous requests for continuances and voluminous pretrial motions. Subtracting that four years from the total delay, a period of approximately one year and five months remains.
In a serious, complex capital murder case such as this, a delay of less than one and one-half years in bringing the defendant to trial is barely sufficient to be "presumptively prejudicial," which ordinarily triggers a constitutional speedy trial analysis and inquiry into the remaining Barker factors.Doggett v. United States (1992), 505 U.S. 647. In this case the only period of the seventeen month delay in bringing Myers to trial that can be attributed directly to the State is approximately four months during which time various scientific tests, including DNA analysis, were performed on the physical evidence in this case, including the foreign pubic hair found on the victim.
Clearly, the length of the delay in bringing Myers to trial in this case weighs more heavily against the Defendant than it does the State, and thus it should be balanced in the State's favor. This factor should not be balanced against the State.
With respect to the second factor, the reason for the four month delay attributed to the State was to afford various scientists time to complete their testing of the physical evidence in this case. This is clearly a valid reason for an appropriate period of delay. Those types of delays in capital cases such as this are inevitable and wholly justifiable.Doggett, supra. The vast majority of the delay in bringing Myers to trial in this case was the direct result of Myers' own pretrial motions and the repeated requests for continuances which he filed. Once again, this factor weighs more heavily against defendant than it does the State, and thus it should be balanced in the State's favor. This factor should not be balanced against the State.
With respect to the third factor, Myers timely and repeatedly asserted his rights by filing pretrial motions claiming his speedy trial rights had been violated. This factor should be balanced in defendant Myers' favor.
With respect to the fourth and final factor, Myers' primary claim here is that he was prejudiced as a result of the delay in bringing him to trial because the testimony of a key witness for the defense, Kim Grimes, was lost. According to Myers, Kim Grimes would have testified that her husband, Gregg Grimes, twice confessed to her that he committed this murder. That would have been very beneficial to Myers because it would have bolstered his reasonable doubt defense. In this regard, Myers argues that the State's case against him was completely circumstantial and weak.
The evidence that Myers claims he would have elicited from the testimony of Kim Grimes at trial was available for Myers' use at trial even though Kim Grimes could not then be located. Kim Grimes had testified during pretrial hearings that on two occasions Gregg Grimes confessed to her his involvement in this killing. That recorded testimony could have been used at trial by Myers under an unavailable declarant hearsay exception, but Myers made no attempt to do so. Moreover, any prejudice to Myers which may have resulted from the loss of Kim Grimes as a live witness was ameliorated by the trial testimony of Gregg Grimes that he may have told Kim Grimes that he killed Amanda Maher. Accordingly, Myers received the benefit of the evidence he wanted to present via Kim Grimes. In addition, other witnesses testified at Myers' trial about statements made to them by Terry Rogers which implicated both Rogers and Gregg Grimes in this murder.
On this record, we conclude that Myers' claim that he suffered serious prejudice as a result of the delay in bringing him to trial has been rebutted. This factor should not be balanced against the State.
Our examination of each of the Barker factors, and weighing and balancing them in light of the particular facts and circumstances of this case, compel the conclusion that David Lee Myers was not deprived of his constitutional right to a speedy trial.
The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 MISCONDUCT BY THE STATE THROUGHOUT THIS CAPITAL TRIAL DENIED MR. MYERS HIS SUBSTANTIAL RIGHTS IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; AND THE RIGHT TO A SPEEDY TRIAL UNDER ARTICLE I, SECTION 2, 9, 10 AND 16 OF THE OHIO CONSTITUTION.
In this assignment of error Myers' claims that prosecutorial misconduct deprived him of a fair trial.
First, Myers argues that he was deprived of a fair trial as a result of pre-indictment delay. Pre-indictment delay is delay which occurs between discovery of the crime and the subsequent filing of charges or indictment.
Myers was arrested the same day this murder was discovered, and he was indicted just four days later. Obviously, there is no pre-indictment delay in this case in the usual sense. Moreover, the subsequent delay in bringing Myers to trial has been addressed in the second assignment of error. For purposes of this assignment of error, Myers uses the term "pre-indictment delay" to refer to the time that elapsed between discovery of this crime and the date Myers was reindicted for this offense for the second time, a period of four and one-half years.
In order to prevail on a claim of pre-indictment delay, a defendant must demonstrate that the delay was intentional, that it was used by the State to gain a tactical advantage over the defendant, and that defendant suffered actual substantial prejudice as a result. United States v. Marion (1971),404 U.S. 307; State v. Luck (1984), 15 Ohio St.3d 150.
Myers first claims that he was prejudiced by the delay in these proceedings because Kim Grimes' testimony was lost as a result. However, as we stated in addressing the previous assignment of error, that testimony was available in the record of pretrial proceedings but Myers never sought to introduce it. In addition, the evidence was introduced through the testimony of other witnesses. We find no substantial prejudice to Myers resulting from the unavailability of Kim Grimes.
Myers claims that during the delay the State hired away his blood spatter expert, who ultimately testified favorably for the State at Myers' trial. An examination of the record reveals that the witness in question, Robert Young, had never been hired by the defense. Rather, the defense merely asked Young to examine some photographs and give them a preliminary opinion. When Young requested additional materials in order to do a complete evaluation, the defense never responded or followed up.
Myers also claims that the State used the period of delay to obtain favorable reports following scientific testing of some of the physical evidence in this case, such as a foreign pubic hair found on the victim. We see no impropriety, however, on the part of the State in having scientific tests such as microscopic and DNA analysis performed on the physical evidence in this case.
Myers claims that the State misrepresented the role the defense would play in presenting this case to the grand jury in order to gain access to privileged, non-discoverable material from the defense. It is unclear from the record to what material Myers refers. In any event, the record demonstrates that the prosecutor did not promise to allow the defense to participate in presenting this case to the grand jury.
Having failed to demonstrate that he suffered any prejudice as a result of the delay in this case, Myers' claim of pre-indictment delay is not well taken.
Also under the claim of prosecutorial misconduct, Myers complains that his constitutional right to a speedy trial under Article I, Section 10 of the Ohio Constitution was violated by that same "pre-indictment delay." In State v. Meeker (1971),26 Ohio St.2d 9, the Ohio Supreme Court held that the right to a speedy trial set forth in the Ohio Constitution includes and prohibits unjustifiable pre-indictment delay. Subsequently, however, in State v. Luck (1984), 15 Ohio St.3d 150, the Supreme Court held that its decision in Meeker was viable only in cases that are factually similar to Meeker. This case is not factually similar to Meeker, and hence Myers' claim that the pre-indictment delay in this case violated his right to a speedy trial under the Ohio Constitution is without merit. Indeed, Myers' claim in this regard is disingenuous, at best, in view of the fact that two years of the delay resulted from the prosecutor's investigation of other suspects at the urging of Myers' attorney.
Lastly, Myers complains of prosecutorial misconduct with respect to numerous allegedly improper remarks made during both the guilt and penalty phases of this trial. In commenting upon the legal standard for establishing prosecutorial misconduct based upon improper remarks, this court observed in State v.Keene (Sept. 20, 1996), Montgomery App. No. 14375, unreported:
 "The conduct of the prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives Defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19; State v. Maurer (1984), 15 Ohio St.3d 239. The test is whether it is clear beyond a reasonable doubt that the jury would have found the accused guilty absent the comments of the prosecutor. State v. Smith
(1984), 14 Ohio St.3d 13, 15. In making this determination the record as a whole must be considered, not just isolated statements; harmless errors must be disregarded. United States v. Hastings (1983), 461 U.S. 499, 509. Wide latitude is given in commenting on and drawing inferences from the evidence. State v. Stephens (1970), 24 Ohio St.2d 76, 82."
Citing State v. Colston (Jan. 31, 1996), Montgomery App. No. 15395, unreported.
None of the remarks about which Myers now complains on appeal were objected to at trial. As a result, the alleged errors have not been properly preserved for appellate review, and we may sustain Myers' argument concerning those remarks only if the prosecutor's conduct rises to the level of "plain error."State v. Wickline (1990), 50 Ohio St.3d 114; State v. Nobles
(1995), 106 Ohio App.3d 246.
We have thoroughly examined each and every one of the remarks Myers complains about, and we find no plain error arising from them. We cannot say that but for the comments of the prosecutor, the outcome of Myers' trial clearly would have been different. State v. Lundgren (1995), 73 Ohio St.3d 474. We are firmly convinced Myers' received a fair trial despite any alleged improper remarks by prosecutors, and we harbor no reasonable doubt that the jury would have reached the same guilty verdict even absent the alleged misconduct.
Myers' third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED TO APPELLANT MYERS' PREJUDICE WHEN IT EXCLUDED HIS RELEVANT EVIDENCE FROM THE TRIAL AND PENALTY PHASES IN VIOLATION OF APPELLANT'S RIGHT TO COMPULSORY PROCESS UNDER THE SIXTH AND FOURTEENTH AMENDMENT, HIS RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT AND HIS RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS.
Myers argues that the trial court abused its discretion when it declined to grant his request to call the county prosecutor and Myers' former defense counsel to testify concerning why this capital murder case was dismissed by the State in 1991. According to Myers, the trial court's refusal to call these witnesses prevented him from fully developing his defense, which was based upon doubt over who committed this heinous offense. That was the central issue in this case, and for a while authorities had considered two other persons, Greg Grimes and Terry Rogers, as possible suspects in this murder.
The admission or exclusion of evidence is a matter resting within the sound discretion of the trial court. A reviewing court will not disturb the trial court's decision on such matters absent a showing of an abuse of discretion. State v.Combs (1991), 62 Ohio St.3d 278; State v. Keene, supra. An abuse of discretion connotes more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. Statev. Adams (1980), 62 Ohio St.2d 151.
Myers asked to call Greene County prosecutor, William Schenck at the guilt phase of this trial to testify as to the reasons why he nollied this case in 1991. Myers proffered statements made by Prosecutor Schenck while testifying at pretrial hearings, and additional statements made by Schenck during his conversations with defense counsel, which had been secretly tape recorded. Myers would offer this evidence to demonstrate that Prosecutor Schenck nollied this case in 1991 in order to further investigate other persons who were suspects in the murder. That, according to Myers, demonstrates "reasonable doubt" over whether he was the perpetrator.
The evidence which Myers sought to introduce was nothing more than an assessment by Prosecutor Schenck of the relative strength or weakness of his case against Myers and his opinion on the need for further investigation in that regard. InState v. Today's Bookstore (1993), 86 Ohio App.3d 810, this court noted that trial counsel's assessment of the strength of his case is not relevant evidence which has any probative value in resolving the issues in that case. The opinions of trial counsel are not evidence, and "judges and jurors must base their verdicts on the evidence, not the respective assessments of trial counsel." Id., at 817. We see no abuse of discretion on the part of the trial court in refusing to admit this testimony by prosecutor William Schenck.
At the penalty phase of the trial, Myers sought to introduce evidence in the form of testimony by his former defense attorney, Dennis Pusateri, regarding the reasons why Prosecutor Schenck nollied this case in 1991. Myers asked to introduce this evidence to show that there was "residual doubt" about his guilt vis-a-vis the suspicion that two other persons, Greg Grimes and Terry Rogers, may have been the perpetrators. Residual doubt is not a valid mitigating factor in a capital murder case. State v. McQuire (1997), 80 Ohio St.3d 390. Accordingly, the trial court did not abuse its discretion in refusing to admit this evidence for that purpose.
During the guilt phase of the trial Myers also sought to introduce testimony by Attorney Pusateri that would have summarized the contents of over four hundred police reports that Pusateri had reviewed. Counsel would have testified that between January and August of 1988, of the more than four hundred crimes that occurred in the same general area where this murder took place, only two of those offenses, this murder and a burglary which Greg Grimes committed on the very same night, involved the use of railroad spikes. According to Myers, this testimony would have demonstrated a common modus operandi, the use of a unique tool in both this murder and the burglary Grimes committed, which raises doubt over whether Myers was the perpetrator of this murder.
Although the trial court refused to admit this testimony by Myers' former counsel, the court did admit the police reports themselves on the theory that those reports speak for themselves. The court also permitted defense counsel to testify about those police reports during the penalty phase of this trial.
Testimony at the guilt phase of this trial summarizing material as voluminous as four hundred police reports may have been a convenience to the court and jury, and admissible per Evid.R. 1006. However, it was not an "abuse of discretion" for the trial court to exclude that testimony. The jury had the police reports themselves, and defense counsel was not prohibited from arguing their import to the jury.
The fourth assignment of error is overruled.
FIFTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED WHEN IT OVERRULED MR. MYERS' MOTION TO SUPPRESS EVIDENCE SEIZED FROM HIS CAR PURSUANT TO A SEARCH WARRANT THAT VIOLATED THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
During a warrant-authorized search of Myers' car, police discovered and seized the wallet of the murder victim as well as that of her boyfriend, which were found inside a glove underneath the front seat. Myers filed a motion to suppress this evidence, arguing that a false statement appeared in the affidavit to obtain the warrant. According to Myers, the false statement was made intentionally or with a reckless disregard for the truth, which renders the search warrant void.Franks v. Delaware (1978), 438 U.S. 154.
The trial court held a hearing on the motion to suppress, following which the court found that Myers had failed to demonstrate that the search warrant affidavit contained a deliberate false statement. The trial court overruled Myers' motion to suppress the two wallets recovered by police from use in evidence.
Paragraph four of the affidavit for the search warrant describes a suspect vehicle which Greg Grimes told police he saw near the murder scene on the night in question. That vehicle is described by the affiant as a "light colored vehicle." Myers claims, however, that the description of the suspect vehicle Greg Grimes gave police on the night of the murder was a "yellow Dodge Roadrunner with black stripes." Myers argues that police knowingly and intentionally employed this false description of the suspect vehicle because that false description more closely conforms to Myers' vehicle.
The evidence adduced at the suppression hearing reveals that during a taped interview with Detective Linkhart, Greg Grimes stated that the vehicle he saw near the crime scene was "yellow with black stripes." Another witness, Don Hilderbrand, told Detective Linkhart that Myers' vehicle, which was also observed in the area that night, was "pale or cream colored." When Detective Linkhart drove Greg Grimes around the area looking for a vehicle similar to the one he had seen, Grimes told Detective Linkhart the car was "pale yellow or cream colored." Detective Greene, the affiant on the search warrant affidavit, testified at the hearing that Detective Linkhart told him that Greg Grimes had described the suspect vehicle he observed near the crime scene as a "light colored vehicle." That is the description Detective Greene used in the affidavit for the search warrant. Myers' vehicle is described in the warrant affidavit as a "white Ford Mustang."
We agree with the trial court that on this record Myers has failed to demonstrate that an intentional false statement or a false statement made with reckless disregard for the truth was employed in the affidavit for the search warrant. In describing the suspect vehicle he observed near the murder scene, Grimes said "yellow" one time and "pale yellow or cream colored" another time. Both descriptions can fairly be characterized as "light colored." No Franks violation has been demonstrated. Accordingly, the search warrant is not invalid and the trial court did not err in overruling Myers' motion to suppress.
The fifth assignment of error is overruled.
SIXTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED WHEN IT DENIED MR. MYERS' RULE 29 MOTION FOR ACQUITTAL, BECAUSE THERE WAS INSUFFICIENT EVIDENCE INTRODUCED TO PROVE IDENTITY. IN ADDITION, THIS CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. THESE ERRORS VIOLATED MR. MYERS' RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION; ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.
Sufficiency of the evidence and weight of the evidence are distinct concepts to which different legal tests apply.State v. Thompkins (1997), 78 Ohio St.3d 380; State v. Hufnagle
(Sept. 6, 1996), Montgomery App. No. 15563, unreported.
 "Sufficiency" of the evidence refers to its logical capacity to demonstrate both the criminal conduct and the culpable mental state that the alleged criminal liability requires. The test is whether all or some part of the evidence that was admitted in the trial would, if believed, convince the average mind beyond a reasonable doubt that the defendant is guilty of committing the offense charged. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "Weight" of the evidence refers to the inclination of the greater amount of the credible evidence presented in a trial to prove the issue established by the verdict that was reached. State v. Thompkins (1997), 78 Ohio St.3d 380. The test is whether that evidence is capable of inducing belief in its truth, and whether those truths preponderate in favor of the verdict according to the applicable burden of proof. Id.
State v. Bradley (Oct. 2, 1997), Champaign App. No. 97-CA-03, unreported, at 7.
A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. Thompkins, supra. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
A weight of the evidence argument challenges the believability of the evidence; which of the competing inferences suggested by the evidence is more believable or persuasive. Hufnagle, supra. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983), 20 Ohio App.3d 172,175:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way.Bradley, supra.
David Myers was convicted of aggravated murder with an accompanying death penalty specification: to wit, that he purposely caused the death of another while committing aggravated robbery and that he was the principal offender in the commission of the aggravated murder. R.C. 2903.01(B); R.C.2929.04 (A) (7).
Identity of the perpetrator was the key issue in this case. Myers argues that the evidence presented by the State was insufficient to identify him as the perpetrator. In support of that argument, Myers points to the lack of physical evidence connecting him to this murder.
While the evidence of Myers' guilt was largely circumstantial, it was nevertheless overwhelming. Circumstantial evidence has the same probative value as direct evidence. State v. Jenks, supra.
Myers was the last person seen with the victim before she was found when they were seen walking together from the Roundtable bar down Home Avenue toward the railroad tracks, in the area where the murder occurred. Myers was observed by a police officer walking with the victim in this area at 1:30 a.m., just three hundred yards from where the victim's body was found.
Myers was next seen at 2:10 a.m. at Five Points Tavern getting into his car alone. By 2:15 a.m., Myers had returned to the Roundtable bar just in time for last call. While there Myers told another patron that he tried to "get some" from the victim but she wasn't willing, so he just dropped her off.
The victim's body was found at 3:00 a.m., near the railroad tracks along a path that runs between Five Points Tavern and the Roundtable bar. Earlier in the evening when Myers, the victim, and the victim's boyfriend, Glenn Smith, were all together, Smith's wallet was given to the victim when Smith was arrested for disorderly conduct. Smith's wallet and the victim's wallet were later found in Myers' vehicle, inside a glove underneath the front seat.
Scientific tests revealed that a foreign pubic hair found in the victim's vaginal area was microscopically identical to Myers' known standard. DNA analysis determined that Myers was included within the two percent of the Caucasian population who could have been the possible donor of that hair. These same tests eliminated as possible donors of the hair the victim's boyfriend, Glenn Smith, and two other persons whom Myers claimed were the likely perpetrators, Greg Grimes and Terry Rogers.
The injuries inflicted upon the victim, including driving a railroad spike through her head, although horrendous, produced relatively little blood, so that the killer would not necessarily have been covered in blood. Thus, the lack of any blood on Myers when he was arrested is not a compelling factor in deciding whether he killed Amanda Maher.
While in jail following his arrest, Myers made statements about the details of this killing of which only the killer would have known. Myers asked one inmate if he ever "put three rocks up a girl?" Myers stated he had. An autopsy performed on the victim revealed three rocks inside her vagina. Myers also advised this same inmate never to try and drive anything through somebody's forehead because it wouldn't go, but it would go through the temple.
A railroad spike was driven through the victim's head via the temple. The victim also suffered a wound to her forehead, which was consistent with an attempt to drive the railroad spike into her head at that location. At the time Myers made these statements, these details about the crime had not been released to the public by police. Myers also admitted to another jail inmate that he walked up to the railroad tracks with the victim. Myers told the inmate: "They can't get me on a rape." Except for the rocks shoved into the victim's vagina, no evidence of sexual assault was found.
Construing the evidence presented and the reasonable inferences deducible therefrom in a light most favorable to the State, as we are required to do, we conclude that a rational trier of fact could have found all of the essential elements of aggravated murder and the death penalty specification, including Myers' identity as the perpetrator, proven beyond a reasonable doubt, State v. Jenks, supra. Therefore, sufficient evidence was presented to sustain Myers' conviction, and the trial court did not commit error in overruling Myers' Crim.R. 29 motion for acquittal.
With respect to Myers' claim that his conviction is against the manifest weight of the evidence, Myers argues that some of the State's witnesses were biased, others were impeached, and considerable doubt remains about his guilt because the evidence of guilt was inconclusive. Myers' theory of the case, that he last saw the victim at the Roundtable bar looking for her boyfriend's car keys, creates a conflict in the evidence. That raises issues concerning credibility of the witnesses and which of the competing inferences suggested by the conflicting evidence is more persuasive. These matters go to the weight of the evidence. in reviewing this entire record, weighing all of the evidence and all reasonable inferences, and considering the credibility of the witnesses, we cannot say that the evidence weighs heavily against a conviction, that the factfinder lost its way, or that a manifest miscarriage of justice has resulted. State v. Martin, supra. The guilty verdict is not against the manifest weight of the evidence.
The sixth assignment of error is overruled.
SEVENTH ASSIGNMENT OF ERROR
 DAVID MYERS' DEATH SENTENCE IS INAPPROPRIATE BECAUSE OF RESIDUAL DOUBT ABOUT HIS GUILT. THIS COURT SHOULD VACATE MR. MYERS' DEATH SENTENCE PURSUANT TO ITS INDEPENDENT REVIEW. OHIO REV. CODE ANN. 2929.05(A).
Myers argues that his death sentence is not appropriate and should be vacated because of "residual doubt" about his guilt. According to Myers, this lingering uncertainty about his guilt arises because of the suspicion which exists that two other suspects, Greg Grimes and Terry Rogers, may have been the perpetrators of this murder.
Residual doubt is no longer a valid mitigating factor. SeeState v. McQuire (1997), 80 Ohio St.3d 391. Myers correctly points out that, prior to McQuire, the Ohio Supreme Court had explicitly recognized that residual doubt was a valid mitigating factor pursuant to R.C. 2929.04(B)(7). State v.Grant (1993), 67 Ohio St.3d 465. Myers argues that the holding in McQuire should not be applied retrospectively to his case. We disagree.
When the Ohio Supreme Court overrules one of its previous decisions, the new holding is retrospective in its operation and the effect is not that the former law was bad law, but that it never was the law. Peerless Electric v. Bowers (1955),164 Ohio St. 209. Accord: State v. Lazzaro (1996), 76 Ohio St.3d 261. Thus, State v. McQuire, supra, applies to this case. Pursuant to that authority, residual doubt is not a valid mitigating factor or proper basis upon which this court can vacate Myers' death sentence.
Myers' seventh assignment of error is overruled.
EIGHT ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED WHEN IT ADMITTED INTO EVIDENCE TOM ADKINS' TESTIMONY ABOUT APPELLANT'S COCAINE USE. THE ADMISSION OF ADKINS' TESTIMONY CONSTITUTES AN ABUSE OF THE TRIAL COURT'S DISCRETION AND IT DENIED APPELLANT MYERS HIS RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT.
A trial court has broad discretion in the admission or exclusion of evidence, and its decision in such matters will not be disturbed on appeal absent a showing of an abuse of discretion. State v. Lowe (1994), 69 Ohio St.3d 527. An abuse of discretion is more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams, supra.
Deputy Sheriff Tom Adkins testified at trial that while he was booking Myers into the jail after his arrest, Myers said to him: "Tom, man, cocaine will make you do anything. It will make you do anything to get it." Myers objected to this testimony.
Myers argues that this evidence should have been excluded because its probative value is substantially outweighed by the danger of unfair prejudice. Evid.R. 403 (A). According to Myers, the probative value of this evidence as a confession to murder is weak or non-existent because the statement doesn't mention committing murder to get cocaine, and at the time it was made Myers thought he was being arrested for some forgeries he committed during the summer of 1988. Therefore, if probative of anything, the statement was probative of Myers' motive for committing those forgeries, not this murder. The danger of unfair prejudice is substantial, according to Myers, because the statement portrays him as the type of person who might commit this offense, reflecting upon his bad character generally, which is prohibited by Evid.R. 404(B).
In overruling Myers' motion to exclude this statement, the trial court noted that the statement is ambiguous to the extent it does not indicate that cocaine necessarily made Myers do anything. Thus, the court concluded that the statement is not necessarily an admission of cocaine use by Myers, and therefore it is not an "other act" for purposes of Evid. R. 404(B). Even so, the trial court concluded, the statement has considerable probative value because a permissive inference arises therefrom that cocaine may have been the motive for Myers' robbing this victim. Accordingly, the trial court concluded that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice.
We agree with the trial court. In the context in which it was made, the statement supports an inference that Myers intended to say that he murdered Amanda Maher in connection with robbing her to obtain money to buy cocaine. It was thus relevant according to the test set out in Evid.R. 401 and admissible pursuant to Evid.R. 402. Its probative value is not substantially outweighed by the danger of unfair prejudice. Evid.R. 403(4)A.
The eighth assignment of error is overruled.
NINTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED WHEN IT ADMITTED INTO EVIDENCE IRRELEVANT AND PREJUDICIAL MATTERS CONTAINED IN DAVID MYERS' DEPOSITION, TAKEN NOV. 17, 1992, IN VIOLATION OF OHIO RULE OF EVIDENCE 403(A) AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.
After the aggravated murder charge pending against Myers was nollied by the State on February 1, 1991, Myers commenced a federal civil rights action against the Greene County Prosecutor in January 1992. Myers was deposed in that action by the attorney representing the prosecutor. At Myers' trial following his re-indictment on this aggravated murder charge, the prosecutor offered into evidence Myers' civil deposition to the extent it dealt with the facts of this murder case. Defense counsel stipulated this evidence except for certain portions dealing with Myers' drug use, which were redacted and are not at issue in this appeal.
At trial portions of Myers' civil deposition were read to the jury dealing with the illegitimate child Myers fathered when he was fourteen, whether Myers had been evaluated by a psychologist or psychiatrist at his attorney's request, and the fact that after this murder Myers experienced nightmares and had trouble falling asleep. Myers argues that this evidence was irrelevant to any of the issues in this case, and the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. Hence, this evidence should have been excluded. Evid.R. 403(A).
With respect to the evidence that Myers fathered a child at age fourteen, Myers argues that this is clearly irrelevant to any issue in this case, and the jury may have inferred from it that Myers was some sort of sexual deviant, particularly given the evidence that Myers had previously raped a woman, Debbie Reagin, and that three rocks had been pushed into the murder victim's vagina.
With respect to whether Myers' attorney had ever requested a mental examination of him, Myers argues that this evidence was irrelevant because his mental state was not at issue in this case, there having been no insanity defense pursued. The jury, however, may have concluded from this evidence that defense counsel suspected Myers might be guilty, and contemplated the legal "excuse" of insanity as a defense.
With respect to Myers' nightmares and the trouble he experienced falling asleep after this murder, Myers complains that the jury may have inferred that his nightmares were the result of a "guilty conscience."
A review of the trial record reveals that Myers made no objection at trial to those portions of his civil deposition about which he now complains. Thus, the error, if any, in admitting that evidence has been waived unless it rises to the level of "plain error." State v. White (1998), 82 Ohio St.3d 16. Plain error does not exist unless it can be said that but for the error the outcome of the trial clearly would have been otherwise. State v. Wickline (1990), 50 Ohio St.3d 114.
Were we to assume, arguendo, that the trial court abused its discretion in admitting certain portions of his civil deposition because those matters were either completely or largely irrelevant, and that the probative value of that evidence was substantially outweighed by the danger of unfair prejudice, we nevertheless cannot say that but for the admission of this evidence the outcome of Myers' trial clearly would have been different. In other words, these errors do not rise to the level of plain error. To the contrary, and in view of the other overwhelming evidence of Myers' guilt, we conclude these errors are harmless beyond a reasonable doubt. State v.Johnson, supra.
The ninth assignment of error is overruled.
TENTH ASSIGNMENT OF ERROR
 THE INTRODUCTION OF GRUESOME, IRRELEVANT, MISLEADING AND INFLAMMATORY EXHIBITS, AND TESTIMONY AT MR. MYERS' CAPITAL TRIAL, DENIED HIM THE RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; ARTICLE I SECTIONS 9, 10 AND 16 OF THE OHIO CONSTITUTION.
Myers complains that the trial court abused its discretion in admitting gruesome photographs of the murdered victim. Properly authenticated photographs, even if gruesome, are admissible in a capital trial if they are relevant and have probative value in assisting the trier of fact to determine the issues, or they are illustrative of testimony and other evidence, as long as the danger of prejudice to a defendant is outweighed by their probative value, and the photographs are not repetitive or cumulative in number. State v. Maurer (1984), 15 Ohio St.3d 239. In State v. Morales (1987), 32 Ohio St.3d 252, the Ohio Supreme Court observed that the probative value of each photograph must outweigh the danger of prejudice to a defendant in a simple balancing test of relative values, and the photographs must not be repetitive or cumulative in nature.
Myers does not argue that the photographs of the deceased victim lack probative value in illustrating the testimony presented at trial. Rather, Myers challenges only the repetitive nature of the photographs, which he claims angered and inflamed the jurors.
The State introduced forty-five photographs of the deceased victim during the guilt phase of the trial. Nine of those photographs depicted the victim's naked body, including the railroad spike driven through her head. Three depicted injuries to the victim's forehead, fifteen depicted facial wounds, five depicted injuries to the victim's neck, seven depicted the rocks being removed from the victim's abdomen, and six depicted the victim's limbs. What these photographs show is clearly illustrative of testimony presented at trial by the coroner and other witnesses concerning the victim's injuries, the cause of her death, and whether the perpetrator of these acts had an "intent to kill."
Myers failed to object during the guilt phase of the trial to any of this photographic evidence. Thus, any error in admitting this evidence has been waived unless it rises to the level of "plain error." State v. Wickline, supra. Plain error does not exist unless it can be said that but for the error, the outcome of the trial clearly would have been different. Id.
In examining the forty-five photographs of the deceased victim, we note that these photographs exhibit some unnecessary repetition. Excluding photographs which are enlargements of other photos, there appear to be eight photographs that are duplicative of other photos. Given the nature of the other thirty-seven properly admitted photographs, however, and the other evidence of Myers' guilt, we cannot say that but for the admission of the repetitive photographs the outcome of Myers' trial clearly would have been different. In other words, the error in admitting the repetitive photographs does not rise to the level of plain error.
The State introduced twenty-three photographs of the victim at the penalty phase of the trial, about one-half of the photos introduced during the guilt phase. These photographs were some of those that had already been introduced during the guilt phase of the trial.
The State was obligated to prove that during the commission of a theft offense Myers inflicted serious physical harm upon the victim resulting in the offense of aggravated robbery, which comprises the statutory aggravating circumstance that renders David Lee Myers eligible for the death penalty. R.C.2911.01; R.C. 2929.04(A)(7). These photographs clearly illustrate that fact, and their probative value outweighs the danger of prejudice to Myers. Moreover, excluding photographs which are enlargements of other photos, there is no repetition or duplication in these twenty-three penalty phase photographs.Morales, supra.
A trial court has broad discretion in the admission or exclusion of evidence, and its decision in such matters will not be disturbed on appeal absent a showing that the court abused its discretion. State v. Maurer, supra. An abuse of discretion connotes more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. Statev. Adams, supra. We see no abuse of discretion in admitting these twenty-three photographs of the deceased victim during the penalty phase of the trial.
Myers next complains about the admission of two photographs which depict him wearing a t-shirt at the time of his arrest which reads, "Lover Boy." Myers argues that this shirt is irrelevant to any issue in this case, and that the jury might infer from the photograph that Myers is a sexual predator or sexual deviant, the kind of person who might commit this type of offense. Thus, according to Myers, any minimal probative value these photographs may have for identification purposes is substantially outweighed by the danger of unfair prejudice, and their admission violates Evid.R. 403(A).
Officer Savage used these photographs at trial to identify Myers as the person who approached him and offered to give the victim a ride home when the victim's boyfriend was arrested at the Roundtable bar for disorderly conduct. Officer Rinehart used these photographs at trial to identify Myers as the person he saw walking with the victim on Home Avenue near the railroad tracks a short time before this murder occurred. However, during the trial Myers withdrew his initial objection to these photographs. Moreover, "abuse of discretion" is the standard we must apply in reviewing the admission or exclusion of this evidence by the trial court. State v. Maurer, supra.
These photographs were clearly relevant, and they have probative value in assisting the trier of fact in determining the issue of identity, a value which is not substantially outweighed by the danger of unfair prejudice to Myers. Their admission was not an error of law, much less an abuse of discretion as that term is defined by Ohio law.
Lastly, Myers complains about the admission of a photograph during the guilt phase of the trial which depicts the victim holding her infant daughter. According to Myers, this constitutes improper victim impact evidence which arouses sympathy and anger from the jury. The admission of this evidence violates Evid.R. 403(A) because its probative value is substantially outweighed by the danger of unfair prejudice, according to Myers.
Both the victim's boyfriend, Glenn Smith, and Officer Savage used this photograph at trial to identify the victim. The trial court admitted this evidence because it was the only available photograph of the victim before her death.
True victim impact evidence, which Ohio law allows during a capital trial, is admissible only during the penalty phase, not during the guilt phase. State v. Fautenberry (1995), 72 Ohio St.3d 435. The photograph in question, while it has victim impact aspects to it, additionally was relevant evidence which has probative value in identifying the victim of this murder. The photograph was admissible for that proper purpose.Fautenberry, supra.
The admission of this evidence, if error at all, was at worst a mere error of law and does not rise to the level of an abuse of discretion as that term is defined by Ohio law.
The tenth assignment of error is overruled.
ELEVENTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED WHEN IT FAILED TO DISMISS THIS CAPITAL INDICTMENT BECAUSE THE GRAND JURY WAS TAINTED BY AN UNFAIR AND BIASED GRAND JUROR IN VIOLATION OF THE FOURTEENTH AMENDMENT AND OHIO CONSTITUTION, ARTICLE I, SECTION 10.
During the grand jury proceedings one of the jurors, in the course of questioning one of the State's witnesses, revealed that during 1984-1985 the juror had worked at Five Points Tavern, and that during that period David Lee Myers came into the bar with weapons. The grand juror indicated that he found Myers "really scary." According to Myers, his right to an impartial, unbiased grand jury was violated by the participation of this grand juror who knew and feared Myers.
At the outset we note that Myers did not object at trial to the make-up of the grand jury, and thus any error in that regard has been waived unless it rises to the level of "plain error." State v. Wickline (1990), 50 Ohio St.3d 114. Plain error does not exist unless it can be said that but for the error the outcome of the trial clearly would have been otherwise. Id.
Myers infers that the mere fact that one of the grand jurors was familiar with him and knew that Myers carried weapons rendered that grand juror incapable of being fair and impartial and influenced that grand juror's decision whether to indict Myers. However, the fact that this grand juror was familiar with Myers and his propensity to carry weapons, and perhaps even feared Myers, does not demonstrate that this grand juror was biased and incapable of carrying out his duties in a fair and impartial manner, in accordance with his oath and the court's instructions. In the absence of such evidence this court cannot simply assume that an otherwise valid indictment is defective. State v. Thomas (1992), 80 Ohio App.3d 452.
This grand jury was aware, via other testimony, that Myers at times carried weapons. Moreover, the grand juror in question was only one of nine members of the grand jury panel, all of whom voted in favor of Myers' indictment. Only seven votes were needed for indictment. Crim.R. 6. Under all of these facts and circumstances we cannot clearly find that but for the participation of this grand juror Myers would not have been indicted. No "plain error" has been demonstrated.
The eleventh assignment of error is overruled.
TWELFTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED WHEN IT INSTRUCTED APPELLANT MYERS' JURY ON THE MENS REA ELEMENT OF AGGRAVATED MURDER. THE TRIAL COURT'S INSTRUCTIONS ON PURPOSE, INTENT AND FORESEEABILITY, IMPERMISSIBLY SHIFTED THE BURDEN OR PROOF TO APPELLANT MYERS ON THE MENS REA ELEMENT OF AGGRAVATED MURDER AND THOSE INSTRUCTORS DILUTED THE STATE'S BURDEN OF PROOF ON THE ESSENTIAL ELEMENTS OF PURPOSE AND INTENT IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.
Myers complains that certain portions of the trial court's jury instructions shifted the burden of proof to him and created a mandatory rebuttable presumption on mens rea, the purpose or specific intent to kill element of the aggravated murder charge. Myers further asserts that the court's instruction on foreseeability diluted the State's burden to prove that Myers specifically intended to cause the victim's death.
At the outset we note that Myers timely submitted written, requested jury instructions on the State's burden of proof, purpose/intent, and causation. In light of those requested instructions, Myers' failure to contemporaneously object to the instructions given by the trial court does not constitute a waiver of any error in those instructions. State v. Wolons
(1989), 44 Ohio St.3d 64; State v. Brooks (1996), 75 Ohio St.3d 148.
In examining the trial court's jury instructions we do not review portions of those instructions in isolation: rather, we review the court's charge as a whole in determining whether the jury was properly instructed. State v. Burchfield (1993),66 Ohio St.3d 261. The jury instructions at issue in this case are as follows:
 Purpose or intent is an essential element of the crime of aggravated murder. The laws says a person acts purposely when it is his specific intention to cause a certain result.
 It must be established in this case that at the time in question, or prior thereto, there was present in the mind of this Defendant a specific intention to kill Amanda Maher while the Defendant was committing or attempting to commit or while fleeing immediately after committing the crime of aggravated robbery.
 Purpose or intent is a decision of the mind to do an act with a conscious objective of producing a specific result or of engaging in specific conduct. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing.
 Purpose with which a person does an act is known only to himself unless he expresses it to others or indicates it by his conduct. The purpose or intent with which a person does an act or brings about a result, is determined from the manner in which it is done, this means — the means or weapons used, and all other facts and circumstances in evidence.
 If a wound is inflicted upon a person with a weapon, instrument or object in the manner calculated to destroy life, the purpose to kill may be inferred from the use of the weapon, instrument or object. However, such inference is not conclusive. It may be accepted or rejected by you in your deliberations. If you accept such inference, then you must consider it together with the sum totality of all the evidence and circumstances bearing upon the issue of intent or lack of intent in determining whether the Defendant specifically intended to cause the death of Amanda Maher.
 Proof of motive is not required. The presence or absence of motive is one of the circumstances bearing upon purpose.
 If a person commits or attempts to commit the crime of aggravated robbery through the use of force or violence and the offense and manner of commission of that offense is such that it would be likely to produce death, then you may infer that such person intended to cause the death of another, which results during the commission of, the attempt to commit, or the flight from the commission of or attempt to commit such offense. However, this inference is nonconclusive.
 The inference may be considered in determining intent, but you must also consider all evidence introduced by the Prosecution to indicate intent to determine whether the Defendant specifically intended to cause the death of Amanda Maher. The Prosecution must prove that the Defendant had the specific intent to cause the death by proof beyond a reasonable doubt.
 In considering whether the Defendant had a specific purpose or intent to kill Amanda Maher, you may infer from all the evidence that when a person engages in the act of committing or attempting to commit aggravated robbery in a manner likely to produce death, he does have the purpose or intent to cause the death of another who is in fact killed. However, this inference is not a conclusive one, and it can be rebutted.
 You must consider all of the evidence introduced by the Prosecution to indicate the Defendant's intent and you must consider all of the evidence introduced by the Defendant as well in deciding this issue.
 The Defendant may not be convicted of aggravated murder unless and until you find the State of Ohio has proved beyond a reasonable doubt that the Defendant specifically intended to cause the death of Amanda Maher.
 Cause is also an essential element of aggravated murder. The State charges that the acts of the Defendant caused the death of Amanda Maher. Cause is an act which is — which is a natural, logical and continual sequence directly producing the death of a person and without which it would not have occurred. Cause occurs when the death is a natural and foreseeable result of the act of the Defendant. There may be more than one cause. However, if the Defendant's act or failure to act was one cause the existence of other causes is not a defense in this case.
 The Defendant's responsibility is not limited to the immediate or most obvious result of the Defendant's act or failure to act. The Defendant is also responsible for the natural and foreseeable results that follow, in the ordinary course of events, from the act or failure to act.
 The test for foreseeability is not whether the Defendant should have foreseen the death in this precise form. The test is whether in light of all the circumstances, a reasonably prudent person would have anticipated that death was likely to result to anyone from the performance of the act or acts.
(T. 3617-3621).
The trial court instructed the jury that while purpose or intent to kill may be inferred from the manner in which a weapon is used or an offense is committed, that inference is not conclusive. It must be considered along with all the other evidence bearing upon intent. The inference, even if accepted, can be rebutted. Those instructions make it clear that the inference is permissive only, one which the jury is free to accept or reject. Under those circumstances the jurors would not feel compelled to presume an intent to kill. State v.Montgomery (1991), 61 Ohio St.3d 410. The trial court's instructions, viewed as a whole, do not create a mandatory presumption that Myers intended to kill this victim, one that shifts the burden of proof to Myers to rebut that presumption.
That portion of the trial court's charge on causation, which was taken from 4 Ohio Jury Instructions, Section 409.56, dealing with foreseeability, has been criticized by the Ohio Supreme Court as ill advised. Burchfield, supra. However, prior to giving this questionable instruction the trial court gave extensive, proper instructions concerning purpose and intent to cause death. Viewing the jury instructions in this case as a whole, as we must, we believe those instructions clearly and properly convey a basis for the jury to understand that before Myers could be found guilty the State was required to prove beyond a reasonable doubt that Myers specifically intended to cause the death of this victim.
The trial court's jury instructions did not dilute the State's burden of proof on the mens rea element of aggravated murder, impermissibly shift the burden of proof to Myers on that element of the offense, or otherwise deprive Myers of his right to a fair trial. Moreover, given the nature of the horrendous injuries inflicted upon the victim in this case, "intent to kill" was clearly established.
The twelfth assignment of error is overruled.
THIRTEENTH ASSIGNMENT OF ERROR
 DEFENSE COUNSEL'S ERRORS AND OMISSIONS AT DAVID MYERS' CAPITAL TRIAL DEPRIVED HIM OF THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.
The standard for determining the quality of representation by defense counsel in a criminal case is set forth inStrickland v. Washington (1984), 466 U.S. 668. In reviewing that standard the Ohio Supreme Court in State v. Bradley
(1989), 42 Ohio St.3d 136, 142, stated:
 "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, supra, at 687-688, 104 S.Ct. at 2064. The court recognized that there are "* * * countless ways to provide effective assistance in any given case. * * *" Id. at 689, 104 S.Ct. at 2065. Therefore, the court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential. * * *" Id. In addition, "[b]ecause of the difficulties inherent in making the evaluation, a court must [538 N.E.2d 380] indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Id. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.
 Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365 [101 S.Ct. 665, 667-68, 66 L.Ed.2d 564] (1981)." Strickland, supra, 466 U.S. at 691, 104 S.Ct. at 2066. To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra, at 694.
Myers first complains that defense counsel was deficient for failing to cross-examine Debbie Reagin and challenge her credibility when she testified that in 1986 Myers had picked her up in a bar in Xenia and raped her. However, by cross-examining a witness who is presenting inadmissible testimony a party waives any error in that regard for purposes of appellate review, State v. Nobles (1995), 106 Ohio App.3d 246. Thus, defense counsel's decision in this case not to cross-examine Reagin could be sound trial strategy. Counsel could reasonably decide to stand on his earlier objection that the admission of Reagin's testimony was a violation of Evid.R. 404(B) and an abuse of the trial court's discretion, preserving that issue for appellate review. Counsel's decisions regarding trial tactics, even if debatable, do not demonstrate ineffective assistance of counsel. State v. Clayton (1980),62 Ohio St.2d 45.
Myers next argues that defense counsel's performance was deficient because counsel agreed via stipulation to admit Myers' civil deposition, even though portions contained irrelevant, prejudicial matters. This claim is closely connected to Myers' ninth assignment of error, wherein he challenges the admissibility of certain portions of that civil deposition as violative of Evid.R. 403(A).
While it was probably error on defense counsel's part not to object to the inadmissible portions of Myers' civil deposition, we nevertheless cannot say that but for counsel's failure to object there is a reasonable probability that Myers would have been acquitted. In other words, the prejudice prong of the ineffective assistance of counsel test has not been met.Bradley, supra.
Next, Myers asserts that counsel was deficient in failing to object at trial to numerous improper remarks by the prosecutor during both guilt and penalty phase closing arguments. This claim is closely connected to Myers' third assignment of error, wherein he asserts prosecutorial misconduct based upon those same remarks. As we indicated there, however, the remarks complained of did not deprive Myers of a fair trial. Accordingly, we clearly cannot say that but for counsel's failure to object to those remarks, there is a reasonable probability that the result of this trial would have been different. No prejudice resulting from counsel's conduct has been demonstrated.
Myers next claims that defense counsel performed in a deficient manner by repeatedly referring to the issue of punishment in his closing argument during the guilt phase. According to Myers, punishment was irrelevant to the only issue to be determined at that stage, his guilt or innocence. During the guilt phase closing arguments, however, defense counsel emphasized the issue of capital punishment in an attempt to persuade the jury to apply a standard of proof to the State's case which was more strict than the customary beyond a reasonable doubt standard. Whether successful or not, this was a reasonable trial strategy and not deficient performance.Clayton, supra.
The Greene County Coroner testified regarding fingernail strangulation marks found on the victim's neck. According to the coroner, Dr. Krause, the amount of pressure or force exerted by the ring finger of the assailant's hand was less than the force exerted by the other three fingers. Myers now claims that defense counsel should have more fully cross-examined Dr. Krause about when and how he formed that opinion. According to Myers, further inquiry would have revealed that Dr. Krause did not form that opinion until after he was told about an injury to Myers' ring finger.
Dr. Krause's opinion about the reduced force exerted by the assailant's ring finger did not appear in his coroner's report. His testimony indicates that the matter was revealed to him by the prosecutor, who informed Dr. Krause that on the date this murder occurred David Myers had a broken ring finger. Dr. Krause testified at trial that the fingernail marks he observed on the victim's neck were consistent with an injury to the assailant's ring finger. Clearly, the factfinder was aware from his testimony of when Dr. Krause had formed his opinion, for whatever value that may have had in determining his credibility. No deficient performance by defense counsel has been demonstrated.
Next, in a claim closely connected to his eleventh assignment of error, Myers asserts that defense counsel was deficient by failing to move for dismissal of the grand jury based upon the fact that one of the grand jurors was familiar with Myers and his propensity to carry weapons, and was therefore biased. As we observed in overruling the eleventh assignment of error, however, the mere fact that one of the grand jurors knew Myers, was aware of his tendency to carry weapons, and may have even feared Myers does not, standing alone, compel the conclusion that this grand juror was incapable of being fair and impartial in accordance with the court's instructions and his oath. In the absence of evidence which demonstrates that one of the grand jurors was biased, or some other valid reason to request dismissal of the grand jury, defense counsel is not deficient by failing to file such a motion. Defense counsel is not required to advance arguments which lack merit. State v. Keene
(1998), 81 Ohio St.3d 646.
Myers next asserts that defense counsel performed deficiently by failing to "life qualify" the jurors, that is, inquire into the juror's willingness to consider particular statutory mitigating factors during the voir dire process. An examination of this trial record reveals that defense counsel wished to do that but was prevented from doing so by the trial court. As we noted in overruling Myers' fourteenth assignment of error, wherein he challenges the trial court's ruling in this regard, due process does not require individual voir dire on whether a prospective juror is willing to consider particular mitigating factors, and a trial court does not abuse its discretion in refusing to allow such a procedure. No deficient performance by defense counsel has been demonstrated.
Myers next argues that defense counsel performed deficiently by failing to object during the guilt phase of the trial to gruesome photographs of the victim's body. These same photographs are the subject of Myers' tenth assignment of error, wherein he challenges their admission. As we observed in overruling that assignment of error, the photographs introduced during the guilt phase of this trial were clearly relevant to material issues in this case and illustrative of testimony presented by the coroner and others. While these guilt phase photographs exhibit some unnecessary repetition, to which defense counsel might have objected, we cannot clearly say that but for counsel's failure to object to the photographs there is a reasonable probability of a different outcome, that Myers would have been acquitted. In other words, no material prejudice flowing from counsel's performance has been demonstrated. Strickland, supra.
Next, Myers claims that defense counsel was deficient by failing to object during the penalty phase to the introduction of evidence from the guilt phase which was not relevant to the aggravating circumstance charged. Myers does not identify what specific evidence the State introduced during the penalty phase that defense counsel should have objected to. To the extent Myers complains of photographs depicting the victim's injuries, that evidence was relevant and admissible to prove the charge that "in committing a theft offense Myers inflicted serious physical harm upon the victim," which makes up the aggravated robbery offense which is the statutory aggravating circumstance Myers was found guilty of committing. R.C. 2911.01; R.C.2929.04(A) (7). No showing of deficient performance by defense counsel has been demonstrated.
Myers next complains that defense counsel was deficient by failing to object to an improper victim impact statement. This claim is closely related to Myers' fifteenth assignment of error, wherein he contests the admission of that victim impact statement.
While the victim impact statement admitted into evidence during the penalty phase did contain an improper expression of opinion by the victim's family about the punishment appropriate for Myers, only the trial court reviewed that material. As we observed in overruling Myers' fifteenth assignment of error, the trial court expressly stated in its sentencing opinion that it did not rely on and was not influenced by anything contained in the victim impact statement in rendering its sentencing decision. Accordingly, the error in admitting the improper expression of opinion about Myers' punishment was harmless, at best, as it had no effect on the court's judgment. Therefore, defense counsel's failure to object did not prejudice Myers. We clearly cannot say that but for counsel's failure to object to the victim impact statement, there is a reasonable probability of a different outcome, that is, Myers would not have been sentenced to death.
Myers next claims that counsel was deficient when he failed to object during sentencing to the fact that Myers was not afforded his right of allocution. This claim dovetails with Myers' sixteenth assignment of error. As we observed in overruling that assignment of error, Myers was not prejudiced by the trial court's failure to afford him an opportunity to speak before the court imposed sentence. We remain convinced beyond a reasonable doubt that the sentence imposed by the trial court would have been the same had Myers been given a chance to speak at that time. We clearly cannot say that but for defense counsel's failure to object to the fact Myers was not afforded an opportunity to speak there is a reasonable probability that Myers would not have been sentenced to death. We see no prejudice resulting from counsel's performance.
Myers next asserts that defense counsel was deficient by not immediately appealing from the order overruling his motion to dismiss this case on speedy trial grounds, or the 1991 dismissal of this capital case by the State via its nolle prosequi. The overruling of a motion to dismiss on speedy trial grounds is not a final, appealable order. State v. Cinema XBookstore (1976), 49 Ohio App.2d 164. Moreover, we have concluded in overruling Myers' second assignment or error that neither his constitutional nor his statutory rights to a speedy trial were violated in this case. No deficient performance by defense counsel has been demonstrated.
With respect to the 1991 dismissal of this case by the State, as a general rule the entry of a nolle prosequi by the State is not a final, appealable order. State v. Eberhardt (1978),56 Ohio App.2d 193. Myers argues that, given the peculiar facts of this case, the nolle was a final, appealable order because at that time he was entitled to discharge based upon a violation of his speedy trial rights, and the nolle was entered in bad faith by the State in order to avoid speedy trial problems. Id.
In disposing of Myers' second assignment of error we determined that Myers' speedy trial rights were not violated, and that the State did not act in bad faith in entering the nolle prosequi. Since the effect of that nolle was to dismiss the aggravated murder charge pending against Myers which carried with it the possibility of a death sentence, counsel clearly did not perform in a deficient manner by electing not to appeal and seek to reverse that favorable outcome.
Lastly, Myers complains that defense counsel performed in a deficient manner by failing to object to the trial court's jury instruction on reasonable doubt. This claim is closely connected to Myers' nineteenth assignment of error, wherein he challenges that jury instruction. In overruling Myers' nineteenth assignment of error, we observed that the trial court's jury instruction defining reasonable doubt in accordance with R.C 2901.05(D) has been approved by the Ohio Supreme Court. Accordingly, no deficient performance by defense counsel has been demonstrated.
A review of this record as a whole demonstrates that Myers was represented by highly competent retained counsel, who put up a vigorous defense in the face of overwhelming evidence of guilt. Myers has failed to demonstrate any deficient performance by counsel which resulted in prejudice to him. The thirteenth assignment of error is overruled.
FOURTEENTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED TO APPELLANT DAVID MYERS' PREJUDICE BECAUSE IT CONDUCTED INDIVIDUAL VOIR DIRE IN A MANNER THAT WAS BIASED IN FAVOR OF CAPITAL PUNISHMENT, IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHT TO A FAIR AND IMPARTIAL SENTENCING JURY AS GUARANTEED BY THE FOURTEENTH AMENDMENT AND HIS EIGHTH AMENDMENT RIGHT TO RELIABLE AND NONARBITRARY CAPITAL SENTENCING.
Myers argues that the manner in which the trial court conducted voir dire was biased in favor of capital punishment, violating his rights to a fair trial and due process of law.
First, Myers complains about the trial court's removal of two jurors for cause because their views on capital punishment would "substantially impair their performance of their duties as jurors in accordance with their instructions and oath."See Wainwright v. Witt (1985), 469 U.S. 412. Myers argues, incorrectly, that this was not the appropriate standard to apply. See: State v. Williams (1997), 79 Ohio St.3d 1.
According to Myers, the trial court should have determined whether these two jurors were eligible to serve under the standard set forth in R.C. 2945.25(C), which provides that conscientious or religious objection to the death penalty, standing alone, is not sufficient to remove a juror for cause. Rather, the juror must unequivocally indicate that under no circumstances will he or she follow the court's instructions and fairly consider the imposition of capital punishment. According to Myers, this standard affords capital defendants in Ohio greater protection than the Wainwright standard, and results in a larger pool of jurors who are willing to return a life imprisonment verdict.
During voir dire, prospective juror Brian Archer stated that he could fairly consider death as a penalty in this case. Prospective juror Beth Knepper stated that she would "have to consider" death as an option. Thus, Myers argues that those two jurors should not have been removed for cause by the trial court because they were not unequivocally opposed to the death penalty in all cases as R.C. 2945.25(C) requires.
"Abuse of discretion" is the appropriate standard of review of a trial court's decision regarding whether jurors should be removed for cause because of their views on capital punishment.State v. Williams, supra; State v. Dennis (1997), 79 Ohio St.3d 421. A close examination of the voir dire proceedings in their entirety demonstrate that, even if we apply the standard set forth in R.C. 2945.25(C), that standard was met in this case.
When the trial court asked Brian Archer if he meant to say that under no circumstance would he follow the court's instructions on the death penalty, and that he could not and would not fairly consider imposing death in this case, Archer responded: "I guess that's what I'm saying." Beth Knepper stated that because of her feelings about the death penalty she could not follow the law and could not concur in a death sentence. This evidence is sufficient to demonstrate that these jurors unequivocally expressed their unwillingness to follow the instructions of the court and fairly consider the imposition of capital punishment in this case. Accordingly, the trial court did not err in removing these jurors for cause, much less abuse its discretion as that term is defined by Ohio law.
Next, Myers complains about the trial court's refusal to remove two jurors, Jason Hill and Larry Lupfer, whom Myers challenged for cause because they were biased in favor of capital punishment. Hill stated during voir dire that he was very much for the death penalty and accepts no excuses for murder. Lupfer stated he favored more capital punishment and that the death penalty was desirable to avoid the burdens on taxpayers resulting from a life sentence. Myers exercised his peremptory challenges to excuse Hill and Lupfer. Although neither Hill nor Lupfer served on Myers' petit jury, Myers argues that he was impermissibly forced by the trial court's erroneous ruling to use his peremptory challenges to remove these jurors, when Myers could have and would have used those peremptory challenges to remove other jurors. Williams, supra.
A close inspection of voir dire reveals that Jason Hill was challenged for cause based upon pretrial publicity and his inability to be fair and impartial as a result of what he already knew or had heard about this case, not his views on capital punishment. Larry Lupfer stated during voir dire that he would be as fair as possible irrespective of his own personal feelings regarding capital punishment, and that he could set aside his feelings and require the State to meet its burden of proof. The record of Lupfer's voir dire, as a whole, simply does not demonstrate that he was biased in favor of capital punishment to such an extent that he was incapable of following the court's instructions and his oath to be a fair and impartial juror. No abuse of discretion is demonstrated.
Next, Myers complains that the manner in which the trial court death qualified the jury during voir dire was unfair and skewed the process in favor of the death penalty by eliminating only those jurors who were unwilling to impose a sentence of death without making any attempt to identify and remove those jurors who would automatically impose a death sentence following a guilty verdict.
Any juror who would automatically vote for the death penalty, regardless of the circumstances, may be challenged for cause based upon a lack of impartiality. Morgan v. Illinois (1992),504 U.S. 719; State v. Williams, supra. To such a juror the presence or absence of either aggravating or mitigating circumstances is entirely irrelevant, and that juror may be unaware that despite their good faith vow to follow the law, maintaining dogmatic beliefs about the death penalty will prevent them from doing so in accordance with the court's instructions and their oath. Morgan, supra. In a capital trial a defendant must be permitted during voir dire to ascertain whether any of the jurors are functioning under such a misconception. Id.
Although the trial court failed to make that inquiry, as Myers has pointed out, the court did allow defense counsel to ask such questions of the jurors after the court questioned the jurors on voir dire. That procedure is sufficient to comply with the requirements of Morgan v. Illinois, supra. See: Statev. Williams, supra. The trial court did not abuse its discretion in employing that procedure in this case.
Lastly, Myers complains that the trial court denied him a fair trial by placing limitations upon defense counsel's questioning of jurors during voir dire about their willingness to consider separate, specific mitigating factors. According to Myers, such questions were necessary to identify jurors biased in favor of the death penalty because of their unwillingness to consider particular mitigating factors.
Morgan v. Illinois, supra, does not require trial courts to allow individual voir dire and separate questioning of jurors regarding their willingness to consider specific mitigating factors. State v. Wilson (1997), 74 Ohio St.3d 381. Even so, inquiries of that kind should be allowed concerning any mitigation that the juror may be asked to consider. Nevertheless, we believe that the voir dire in this case was adequate to reveal any bias against mitigation that would render a juror ineligible to serve. Id. We see no abuse of discretion.
This assignment of error is overruled.
FIFTEENTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED WHEN IT CONSIDERED A VICTIM IMPACT STATEMENT AT THE CAPITAL SENTENCING HEARING OF MAR. 1, 1996. APPELLANT MYERS' RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS AND HIS RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT WERE VIOLATED BY THE TRIAL COURT'S CONSIDERATION OF A VICTIM IMPACT STATEMENT.
Evidence may be introduced during the penalty phase of a capital trial about the victim and the impact of the murder upon the victim's family, what is called "victim impact evidence." Payne v. Tennessee (1991), 501 U.S. 808; State v.Fautenberry (1995), 72 Ohio St.3d 435. An expression of opinion by a victim's family member about the appropriate punishment for the defendant exceeds the permissible scope of victim impact evidence. Fautenberry, supra. In order for such expressions of opinion to require reversal of a death sentence, however, the defendant must demonstrate that the court contemplated or relied upon that evidence in reaching its sentencing determination. Fautenberry, supra.
During the penalty phase of this capital case a victim impact statement was provided only to the trial court, not to the jury. Included within that victim impact statement was an expression of opinion by one of the victim's family members that the only appropriate punishment for Myers was death. Such an opinion was improper victim impact evidence. That error, however, does not require reversal of Myers' death sentence.
Although the trial court clearly reviewed the victim impact statement in this case, the court expressly stated in its sentencing opinion that the victim impact statement "has not provided any information that would in any way affect the court's decision." We, of course, must presume that the trial court considered only relevant, material, competent evidence in arriving at its sentencing decision, unless the contrary affirmatively appears from the record. State v. Dennis (1997),79 Ohio St.3d 421.
This record affirmatively demonstrates that the trial court did not rely upon and was not influenced by anything in the victim impact statement in arriving at its sentencing decision. Thus, the improper opinion about punishment included in the victim impact statement does not necessitate reversal of Myers' death sentence. Fautenberry, supra; State v. Allard (1996),75 Ohio St.3d 482.
The fifteenth assignment of error is overruled.
SIXTEENTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT MYERS' STATUTORY RIGHT OF ALLOCUTION UNDER OHIO REV. CODE ANN. SECTION 2945.07 AND HIS RIGHT TO REBUTTAL FOR CAPITAL SENTENCING IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT.
Prior to imposing sentence, the trial court must afford both defendant and his counsel an opportunity to speak and present information in mitigation of punishment. Crim.R. 32(A)(1). The trial court in this case failed to follow that mandate. However, Myers failed to register any objection. Accordingly, any error has been waived unless it rises to the level of "plain error." State v. Wickline (1990), 50 Ohio St.3d 114. Plain error does not exists unless it can be said that but for the error, the outcome of the trial clearly would have been otherwise. State v. Wickline, supra.
At the penalty phase of this capital trial Myers made a lengthy statement under oath. The record reflects that Myers was given the opportunity to present any evidence in mitigation of his sentence that he wished to present. Myers argues, however, that when the trial court failed to afford him his right of allocution, it deprived him of his only opportunity to explain or rebut the information contained in the victim impact statement which the court reviewed.
The trial court stated in its sentencing opinion that nothing in the victim impact statement affected its sentencing decision in any way. Accordingly, Myers suffered no prejudice because he was not afforded an opportunity to rebut the information contained in the victim impact statement. Furthermore, Myers has failed to specify what additional information he would have presented to the court had he been given a chance to speak. Under all of these circumstances, we conclude that the error in not affording Myers his right of allocution is harmless beyond a reasonable doubt. Cleveland v. Markris (1993), 90 Ohio App.3d 742. We cannot clearly say that but for the trial court's failure to afford Myers his right of allocution, Myers would not have been sentenced to death. No plain error has been demonstrated.
The sixteenth assignment of error is overruled.
SEVENTEENTH ASSIGNMENT OF ERROR
 OHIO REV. CODE ANN. SECTION 2929.03(D)(1) (ANDERSON 1996) AND OHIO REV. CODE ANN. SECTION 2929.04 ARE UNCONSTITUTIONALLY VAGUE IN VIOLATION OF APPELLANT MYERS' RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
Pursuant to R.C. 2929.03(D)(1), the "nature and circumstances of the aggravating circumstance the offender was found guilty of committing" is a factor which must be considered by the sentencer in deciding whether to impose a sentence of death upon the offender. Pursuant to R.C. 2929.04(B) however, the "nature and circumstances of the offense" are classified as a mitigating factor which must be weighed by the sentencer against the aggravating circumstance the offender was found guilty of committing. Myers argues that these two statutes create an irreconcilable dichotomy, whereby "nature and circumstances evidence" is used both as an aggravating circumstance and as a mitigating factor. That, according to Myers, taints the death penalty weighing process and renders it unconstitutionally vague, because the sentencer's discretion is not properly guided and the sentencer is free to consider and weigh a statutory mitigating factor, the nature and circumstances of the offense, as a non-statutory aggravating circumstance.
This precise claim has been previously considered and rejected by the Ohio Supreme Court. See State v. McNeill
(1998), 83 Ohio St.3d 438, 453. Upon the authority of that precedent, we are required to also reject this claim of error.
Myers next complains that the jury instructions given by the trial court in accordance with R.C. 2929.03(D)(1) and R.C.2929.04(B) permitted the jury to impermissibly consider the nature and circumstances of the offense as a non-statutory aggravating circumstance. The vitality of this claim depends upon the validity of Myers' previous claim, which the Ohio Supreme Court has expressly rejected. Moreover, the record does not support this claim.
The trial court instructed the jury during the penalty phase as follows:
 You will consider all of the evidence, arguments, the testimony of the Defendant, and all other information and reports which are relevant to the nature and circumstances of the aggravating circumstance. The aggravating circumstance was that the offense of aggravated murder was committed while the Defendant was committing or attempting to commit or fleeing immediately after committing or attempting to commit the offense of aggravated robbery, and the Defendant was the principal offender in the commission of the aggravated murder.
(T. 4169-4170).
The above penalty phase jury instruction does not mention the "nature and circumstances of the offense," much less invite the jury to improperly consider and weigh that particular mitigating factor as a non-statutory "aggravating circumstance." Rather, the instruction properly advises the jury, in accordance with R.C. 2929.03(D)(1), that in determining whether to recommend that a sentence of death be imposed upon Myers they must consider all evidence relevant to the statutory aggravating circumstance Myers was found guilty of committing, the aggravated robbery, including the facts and circumstances surrounding that aggravated robbery. State v.Wogenstahl (1996), 75 Ohio St.3d 344. This claim of error lacks merit.
Myers additionally complains about several instances of alleged prosecutorial misconduct during penalty phase closing arguments, claiming that the prosecutor repeatedly implored the jury to consider the "nature and circumstances of this offense" as part of the "aggravation" which outweighs Myers' evidence of mitigation.
Ordinarily, the conduct of the prosecutor during trial cannot be made a ground of error on appeal unless the conduct deprives defendant of a fair trial. State v. Maurer (1984), 15 Ohio St.3d 239; State v. Apanovitch (1987), 33 Ohio St.3d 19. Myers failed to object to the prosecutor's remarks during penalty phase closing arguments about which he now complains. Thus, any error in that regard has been waived unless it rises to the level of "plain error." State v. Wickline, supra; State v.Wogenstahl, supra; State v. Nobles (1995), 106 Ohio App.3d 246. Plain error does not exist unless it can be said that but for the error, the outcome of the trial clearly would have been different. Wickline, supra.
We must review the prosecutor's penalty phase closing argument in its entirety, not as isolated statements, State v.Keene (Sept. 20, 1996), Montgomery App. No. 14375, unreported. Here, the record reflects that the prosecutor did not improperly suggest that the "nature and circumstances of the offense" were "aggravating circumstances" that the jury could weigh against Myers' evidence of mitigation. Rather, consistent with R.C. 2929.03(D)(1), the prosecutor commented upon the "nature and circumstances of the particular statutory aggravating circumstance Myers was found guilty of committing," the aggravated robbery. The prosecutor's remarks about the facts surrounding that statutory aggravating circumstance were not improper. State v. McNeill, supra; Wogenstahl, supra; Statev. Gumm (1995), 73 Ohio St.3d 413.
The particular statutory aggravating circumstance specified in this case, aggravated robbery, required proof that in committing a theft offense David Lee Myers had inflicted serious physical harm upon the victim. In the course of considering "any evidence raised at trial relevant to the aggravating circumstance the defendant was found guilty of committing," along with "testimony and other evidence relevant to the nature and circumstances of the aggravating circumstance the defendant was found guilty of committing," as R.C.2929.03(D)(1) directs, the court and jury properly considered the nature of the injuries and serious physical harm inflicted upon this victim during the theft offense. Moreover, it was entirely proper for the prosecutor to introduce and comment upon such evidence at the penalty phase. Gumm, supra;Wogenstahl, supra.
We are confident that the prosecutor's remarks concerning the facts surrounding the statutory aggravating circumstance Myers was found guilty of committing were not improper. We also think it clear, beyond a reasonable doubt, that the comments made no difference in the outcome of this case, given the minimal amount of mitigation evidence presented by Myers. Keene, supra;Wogenstahl, supra. Myers' evidence of mitigation in this case consisted largely of "residual doubt," which is not a valid mitigating factor. State v. McQuire (1997), 80 Ohio St.3d 391. The only other evidence of mitigation offered by Myers, his history, character and background, is entitled to some, but only very slight weight. Thus, we clearly cannot say that but for the prosecutor's remarks during the penalty phase closing arguments Myers would not have been sentenced to death. No "plain error" has been demonstrated.
Lastly, Myers complains that the trial court improperly weighed a non-statutory aggravating circumstance, the victim's injuries, against his evidence of mitigation. In its sentencing opinion, in discussing the statutory aggravating circumstance Myers was found guilty of committing, the trial court stated:
AGGRAVATING CIRCUMSTANCE
 The offense was committed while the offender was committing or attempting to commit the offense of Aggravated Robbery and the offender was the principal offender.
 The victim in this case, Amanda Maher, was horribly brutalized and killed. She had been strangled. She had an injury to her forehead, and a railroad spike drive (sic) through her head by way of the temple. Her jaw was broken in two places. She had three rocks shoved into her vagina. Amanda Maher sustained one defensive wound, a would inflicted on her hand by her attempt to fight off the attacker. Yet with all of these injuries, Amanda Maher did not die quickly, but lingered for several hours before she died. The nature of the horrible injuries inflicted on her during the course of the robbery which is the aggravating circumstance needs to be given great weight.
(Opinion at 2-3). Myers argues that it is clear from the above statements that the trial court improperly considered and weighed non-statutory factors, the victim's horrible injuries, as aggravating circumstances. We disagree.
In order to impose a sentence of death upon the defendant, the statutory aggravating circumstances set forth in R.C.2929.04(A), which have been proved beyond a reasonable doubt during the guilt phase of the proceedings, must outweigh the defendant's evidence of mitigation beyond a reasonable doubt. R.C. 2929.03. Contrary to Myers' argument, in making a determination as to whether a sentence of death should be imposed, it is not only proper but a requirement that the trial court and jury consider any evidence raised at trial and any other evidence relevant to the "nature and circumstances of the statutory aggravating circumstance defendant was found guilty of committing." R.C. 2929.03(D)(1); Gumm, supra; Wogenstahl,supra.
The statutory aggravating circumstance in R.C. 2929.04 (A) (7) of which Myers was found guilty during the guilt phase of this trial was aggravated robbery. One of the elements of that offense was that in committing a theft offense Myers inflicted serious physical harm upon the victim. R.C. 2911.01. The comments by the trial court in its sentencing opinion regarding the nature of the victim's injuries and the physical harm inflicted upon her merely demonstrate compliance with R.C.2929.03(D)(1)'s mandate that the court and jury consider any evidence relevant to the nature and circumstances of the statutory aggravating circumstance charged. Consideration of this evidence was proper, Wogenstahl, supra; Gumm, supra, and it does not constitute converting a statutory mitigating factor such as the "nature and circumstances of the offense," or some other factor not found in R.C. 2929.04(A), into an "aggravating circumstance."
The seventeenth assignment of error is overruled.
EIGHTEENTH ASSIGNMENT OF ERROR
 THE TRIAL COURT COMMITTED STRUCTURAL ERROR WHEN IT SENTENCED DAVID MYERS TO A TERM OF IMPRISONMENT FOR AGGRAVATED ROBBERY WHEN MR. MYERS WAS NEITHER INDICTED NOR TRIED FOR AGGRAVATED ROBBERY, IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
The statutory aggravating circumstance that Myers was found guilty of committing and which rendered him eligible to receive the death penalty was that this aggravated murder was committed while Myers was committing or attempting to commit aggravated robbery. R.C. 2929.04(A)(7). Myers was not, however, separately charged with that robbery offense. Nevertheless, in its judgment entry filed March 1, 1996, the trial court sentenced Myers to ten to twenty-five years imprisonment for aggravated robbery.
In his eighteenth assignment of error Myers argues that his right to due process of law was violated when the trial court imposed a sentence upon him for aggravated robbery when he was never indicted, tried, or found guilty of that particular offense. The State has properly conceded that this was error. An examination of the docket and journal entries reveals, however, that this error was remedied by the trial court's amended judgment entry, filed March 14, 1996, which does not include any sentence for aggravated robbery. Thus, the trial court's sentencing error has been corrected. No prejudice is demonstrated.
The eighteenth assignment of error is overruled.
NINETEENTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED WHEN IT CHARGED THE JURY ON THE STATUTORY DEFINITION OF REASONABLE DOUBT IN OHIO REV. CODE ANN. SECTION 2901.05.
The Ohio Supreme Court has repeatedly approved using the definition of reasonable doubt set forth in R.C. 2901.05(D).State v. VanGundy (1992), 64 Ohio St.3d 230; State v. Loza
(1994), 71 Ohio St.3d 61. On the authority of that precedent, we overrule the nineteenth assignment of error.
TWENTIETH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT MYERS' MOTION TO DISMISS HIS DEATH PENALTY SPECIFICATION ON THE GROUND THAT OHIO'S DEATH PENALTY LAWS ARE UNCONSTITUTIONAL. THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 2, 9, 10
AND 16, ARTICLE I OF THE OHIO CONSTITUTION ESTABLISH THE REQUIREMENTS FOR A VALID DEATH PENALTY SCHEME. OHIO REV. CODE ANN. SECTIONS 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04 AND 2929.05. OHIO'S DEATH PENALTY STATUTE DOES NOT MEET THE PRESCRIBED CONSTITUTIONAL REQUIREMENTS AND IS UNCONSTITUTIONAL ON ITS FACE AND AS APPLIED TO APPELLANT MYERS.
Each of the claims Myers presents has previously been rejected by the Ohio Supreme Court. See: State v. Jenkins
(1984), 15 Ohio St.3d 164; State v. Buell (1986), 22 Ohio St.3d 124; State v. Steffen (1987), 31 Ohio St.3d 111; State v. Zuern
(1987), 32 Ohio St.3d 56; State v. Henderson (1988), 39 Ohio St.3d 24; State v. Sowell (1988), 39 Ohio St.3d 322; Statev. Lorraine (1993), 66 Ohio St.3d 414; State v. Phillips
(1995), 74 Ohio St.3d 72. On the authority of that precedent, we overrule the twentieth assignment of error.
Finding no prejudicial error in the proceedings of the trial court which deprived Myers of his right to a fair trial and which would warrant reversal of his conviction, we hereby affirm Myers' conviction on the aggravated murder charge and the accompanying death penalty specification.
 INDEPENDENT REVIEW AND PROPORTIONALITY ANALYSIS
Having affirmed Myers' aggravated murder conviction, pursuant to R.C. 2929.05 we must conduct an independent review of the record and consider both the offense and the offender in determining whether the evidence supports the aggravating circumstance Myers was found guilty of committing, whether that aggravating circumstance Myers was found guilty of committing outweighs the mitigating factors in this case beyond a reasonable doubt, and whether the sentence of death imposed upon Myers is excessive or disproportionate to the penalty imposed in similar cases.
First, we conclude that the evidence presented at trial supports the statutory aggravating circumstance that Myers was found guilty of committing, beyond a reasonable doubt. We agree with the jury and the trial court that David Lee Myers murdered the victim, Amanda Maher, in the course of committing aggravated robbery, and that Myers was the principal offender in the commission of that aggravated murder. R.C.2929.04(A)(7).
We must next determine whether that aggravating circumstance Myers was found guilty of committing outweighs the mitigating factors in this case beyond a reasonable doubt. The aggravating circumstance must be weighed against the nature and circumstances of the offense, the history, character, and background of the offender, and all of the additional mitigating factors set forth in R.C. 2929.04(B), which include the following:
 (1) Whether the victim of the offense induced or facilitated it;
 (2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;
 (3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;
(4) The youth of the offender;
 (5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;
 (6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;
 (7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death.
Nothing in the nature and circumstances of this aggravated murder offense appears mitigating. This was a savage, vicious assault that involved horrible injuries inflicted upon the victim, including a railroad spike driven through her head and rocks shoved into her vagina. We find nothing related to these events that even remotely lessens Myers' moral culpability or diminishes the appropriateness of the death penalty.
Myers' history, character, and background is one of only two mitigating factors that Myers asked the jury and the court to consider during the penalty phase of the trial. Myers' ex-wife testified that he is a good father to his two children, a fact which was confirmed by Myers' mother, sister, and present wife. A pastor from the Faith Christian Fellowship Church testified that Myers has been attending church, he has accepted the Lord, he is seeking spiritual guidance, and is attempting to deal with his drug problems. In our view, these factors are entitled to some, albeit very little, weight in mitigation. We find nothing in Myers' history, character, and background that lessens his moral culpability in any significant way.
We find no evidence of mitigation in the factors set forth in R.C. 2929.04(B)(1), (2), or (3). The victim did not induce or facilitate this offense, there is no evidence that at the time of this offense Myers was under duress, coercion, or strong provocation, and there is no evidence that Myers was unable to appreciate the criminality of his conduct or conform his conduct to the requirements of the law.
Youth of the offender, R.C. 2929.04(B)(4), is a factor entitled to very little or no weight in mitigation because Myers was approximately twenty-three years old at the time of this offense.
We find nothing of mitigating value in the factor set forth in R.C. 2929.04(B)(5), the lack of a significant history of prior criminal convictions and delinquency adjudications. Myers had previous felony convictions for both sexual battery and forgery.
Because Myers was the principal offender in this aggravated murder, there is nothing of mitigating value in the factor set forth in R.C. 2929.04(B)(6).
Finally, under R.C. 2929.04(B)(7), the "catch-all" provision which requires us to consider as possible mitigation "any other factors relevant to whether the offender should be sentenced to death," we find very slight mitigating value in favorable statements from relatives, friends, and associates of Myers. This factor is entitled to some, albeit only slight, weight in mitigation.
Myers also presented evidence during the penalty phase to support his argument that there was "residual doubt" about his guilt because of suspicion which existed concerning two other possible suspects, Gregg Grimes and Terry Rogers, whom Myers claims were the likely perpetrators of this murder. Residual doubt is not a valid mitigating factor. State v. McQuire
(1997), 80 Ohio St.3d 390. Even if it was, no residual doubt that Myers was, in fact, the killer is demonstrated.
Having independently reviewed and weighed all of the evidence in the record, and having considered both the offense and the offender, we conclude that the aggravating circumstance Myers was found guilty of committing outweighs the mitigating factors in this case, beyond a reasonable doubt. Myers' scant evidence of mitigation pales in comparison to the statutory aggravating circumstance Myers was found guilty of committing. That aggravating circumstance, by its very nature, encompasses among its elements the injuries and serious physical harm inflicted upon this victim during commission of a theft offense. Those injuries and physical harm in this case were shockingly brutal, and demonstrate a profound disrespect for human life. We agree with the trial court that the statutory aggravating circumstance proven in this case deserves great weight.
Finally, we must determine whether Myers' death sentence is appropriate, that is, whether it is excessive or disproportionate to the penalty imposed in similar cases. R.C.2929.05(A). Our proportionality review is satisfied by reviewing those cases already decided by this court in which the death penalty was imposed. See State v. Steffen (1987),31 Ohio St.3d 111. We decline Myers' invitation to expand the scope of that proportionality review. This court has previously affirmed death sentences in cases involving felony murder aggravating circumstances. See: State v. Brewer (August 26, 1988), Greene App. No. 87-CA-67, unreported; State v. Hooks
(Oct. 22, 1986), Montgomery App. No. 9275, unreported; State v.Keene (Sept. 20, 1996), Montgomery App. No. 14375, unreported. Accordingly, Myers' death sentence is appropriate, proportionate, and not excessive when compared to the penalties we have upheld in similar cases. Therefore, we affirm Myers' conviction and sentence of death in all respects.
YOUNG, J. and FAIN, J., concur.
Copies mailed to:
William F. Schenck, Esq. Robert K. Hendrix, Esq. David H. Bodiker, Esq. Joseph E. Wilhelm, Esq. A. Ruben Lopez, Esq. Hon. M. David Reid.